Steven M. Tindall, SBN #187862
Email: stindall@rhdtlaw.com
RUKIN HYLAND DORIA & TINDALL LLP
100 Pine Street, Suite 2150
San Francisco, California 94111
Telephone: (415) 421-1800
Facsimile: (415) 421-1700

Beth E. Terrell, SBN #178181
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray
Email: jmurray@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 N. 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PIVOTAL PAYMENTS INC., d/b/a CAPITAL PROCESSING NETWORK and CPN,<br><br>Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

Plaintiff Abante Rooter and Plumbing, Inc. (hereinafter "Plaintiff"), by its undersigned counsel, for this class action complaint against Pivotal Payments Inc. d/b/a Capital Processing Network and CPN, and its present, former, or future direct and indirect parent companies,

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 1

1 | subsidiaries, affiliates, agents, and/or other related entities ("Pivotal Payments" or "Defendant"),
2 | allege as follows:

## I.  INTRODUCTION

3 | 1. <u>Nature of Action</u>.  Plaintiff, individually and as class representative for all others similarly situated, brings this action against Pivotal Payments for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## II.  PARTIES

2. Plaintiff Abante Rooter and Plumbing, Inc. ("Plaintiff") is a corporation based in California, with its principal place of business in Alameda County, California.

3. Defendant Pivotal Payments Inc. d/b/a Capital Processing Network and CPN ("Pivotal Payments") is a Delaware corporation with its principal place of business in Plano, Texas.  Pivotal Payments is registered to do and is doing business in California and throughout the United States.

## III.  JURISDICTION AND VENUE

4. <u>Subject Matter Jurisdiction</u>.  This Court has subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's TCPA claims arise under the laws of the United States, specifically 47 U.S.C. § 227.  Furthermore, this Court has original jurisdiction over Plaintiff's claims pursuant to the "Class Action Fairness Act," 28 U.S.C. §§ 1332(d), 1435.  While it is anticipated that neither Plaintiff nor any individual class member's claims exceeds $75,000, the aggregate amount in controversy for the Class exceeds $5 million exclusive of interest and costs, and Plaintiff is a citizen of a different state from Defendant.

5. <u>Personal Jurisdiction</u>.  This Court has personal jurisdiction over Pivotal Payments because it has submitted to California jurisdiction by registering with the Secretary of State to do business in this state, and a substantial part of the wrongful acts alleged in this Complaint were committed in California.

6. <u>Venue</u>. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## IV. THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 47 U.S.C. § 227

7. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

8. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

9. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

10. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

11. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 3

> behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

12. The FCC regulations also "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 92-90, Memorandum and Order, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

13. The FCC confirmed this principle in 2013, when it explained that "a seller …. may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *See In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013).

### V. FACTUAL ALLEGATIONS

**A. Factual Allegations Regarding Pivotal Payments**

14. Pivotal Payments is a "leading provider of technology-driven global payment processing solutions for small to large enterprises." *See* http://www.pivotalpayments.com/about-us/pivotal-payments (last visited September 14, 2016).

15. Pivotal Payments "deliver[s] the best payment acceptance strategies" to its clients by operating "multiple divisions dedicated to specific industry segments." *Id.*

16. One such division is Capital Processing Network or CPN ("CPN"), which Pivotal Payments acquired in 2014. *See* http://www.pivotalpayments.com/press-release/pivotal-payments-acquires-key-assets-capital-processing-network-llc (last visited September 14, 2016).

17. CPN "provides complete merchant services and credit card processing to point-of-sale businesses across the U.S." *Id.*

1        18.     One of Pivotal Payments' strategies for marketing its credit card processing services involves the use of an automatic telephone dialing system ("ATDS") to solicit business.

         19.     Pivotal Payments uses ATDS equipment that has the capacity to store or produce telephone numbers to be called and which includes autodialers and predictive dialers, and plays a prerecorded message once the calls connect.

         20.     Recipients of these calls, including Plaintiff, did not consent to receive such telephone calls.

         21.     Pivotal Payments also make calls using an ATDS to cellular telephones whose owners have also not provided prior express written consent to receive such calls.

**B.     Factual Allegations Regarding Plaintiff**

         22.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

         23.     Plaintiff is a small plumbing company that provides an array of commercial and residential draining and plumbing services, including emergency draining and plumbing services.

         24.     Plaintiff does business in the San Francisco Area with several cellular telephone numbers that are assigned to different cities around the San Francisco Bay Area, including (209) 383-XXXX, (925) 253-XXXX, and (510) 351-XXXX.

         25.     Each of the cellular telephone numbers listed above are regularly answered by Plaintiff's owner, Fred Heidarpour.

         26.     Plaintiff receives important, and often urgent, calls from current and potential customers on each of the above-listed cellular telephone numbers.

         27.     It is imperative for Plaintiff to answer every call made to its telephone numbers in order to provide prompt, quality customer service to Plaintiff's customers, especially in response to emergency draining and plumbing issues.

         28.     Similarly, because Plaintiff's business provides emergency services, every call made to its telephone number could be new customer with a crisis situation.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 5

29. On or around July 15, 2016, Plaintiff received a telemarketing call on its cellular telephone number, (925) 253-XXXX, from, or on behalf of, Pivotal Payments.

30. The caller ID showed the telephone call was from (941) 208-8241.

31. When the call was answered, there was a lengthy pause and a click followed by silence before any voice came on the line, which indicated to him that the call was made using an ATDS.

32. Following the lengthy pause and extended silence, a prerecorded message played, stating words to the effect that the call was marketing credit card processing services. The called party was instructed to press a button on their telephone for further information.

33. In an attempt to determine the identity of the caller, Plaintiff pressed the button for further information and was instructed to leave a voice message with a telephone number by another prerecorded voice.

34. In a further attempt to determine the identity of the caller, Plaintiff left a voice message requesting a call back at telephone number (510) 534-XXXX.

35. Shortly after leaving the voice message, Plaintiff received a call on Plaintiff's cellular telephone number, (925) 253-XXXX, from a person who identified himself as Leif Gates.

36. Shortly after Mr. Gates identified himself, the call unintentionally disconnected.

37. Later on July 15, 2016, Plaintiff received a telemarketing call on its cellular telephone number, (209) 383-XXXX, from, or on behalf of, Pivotal Payments.

38. The caller ID showed the telephone call was from (941) 208-8241.

39. When the call was answered, there was again a lengthy pause and a click followed by silence before any voice came on the line, which indicated to him that the call was made using an ATDS.

40. Following the lengthy pause and extended silence, a prerecorded message played stating words to the effect that the call was marketing credit card processing services. The called party was instructed to press a button on their phone for further information.

1    41.    Again, in an attempt to determine the identity of the caller, Plaintiff pressed the
2 button for further information and was instructed to leave a voice message with a telephone
3 number by another prerecorded voice.

4    42.    In a further attempt to determine the identity of the caller, Plaintiff left a voice
5 message requesting a call back at telephone number (510) 459-XXXX.

6    43.    After leaving the voice message, Plaintiff received a call on Plaintiff's cellular
7 telephone number, (510) 459-XXXX, on July 18, 2016 from a person who identified herself as
8 "Amanda of CPN USA."

9    44.    Amanda informed Plaintiff that the purpose of the call was to offer Plaintiff credit
10 card processing services provided by CPN.

11   45.    On July 18, 2016, after speaking with Amanda, Plaintiff received a follow up
12 email from Amanda Hanf at afanf@cpnusa.com, which identified Ms. Hanf as a senior account
13 executive at CPN.

14   46.    The email further encouraged Plaintiff to "check out our website at
15 www.cpnusa.com" and detailed the cost saving credit card processing services CPN could
16 provide.

17   47.    On August 19, 2016, Amanda called Plaintiff twice to market CPN's credit card
18 processing services.

19   48.    In response to these two telephone calls from Amanda, Plaintiff requested that
20 CPN cease calling.

21   49.    On or around July 19, 2016, Plaintiff received another telemarketing call on its
22 cellular telephone number, (510) 351-XXXX, from, or on behalf of, Pivotal Payments.

23   50.    The caller ID showed the telephone call was from (251) 263-0995.

24   51.    When Plaintiff answered the telephone call, there was again a lengthy pause and a
25 click followed by silence before any voice came on the line, which indicated to him that the call
26 was made using an ATDS.

27

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 7

52. Following the lengthy pause and extended silence, a prerecorded message played stating words to the effect that the call was marketing credit card processing services. The called party was instructed to press a button on their telephone for further information.

53. Again, in an attempt to determine the identity of the caller, Plaintiff pressed the button for further information and was instructed to leave a voice message with a telephone number by another prerecorded voice.

54. On or around July 28, 2016, Plaintiff received another telemarketing call on its cellular telephone number, (925) 253-XXXX, from, or on behalf of, Pivotal Payments.

55. The caller ID showed the telephone call was from (828) 548-6764.

56. When Plaintiff answered the telephone call, there was again a lengthy pause and a click followed by silence before any voice came on the line, which indicated to him that the call was made using an ATDS.

57. Following the lengthy pause and extended silence, a prerecorded message played stating words to the effect that the call was marketing credit card processing services. The called party was instructed to press a button on their telephone for further information.

58. Again, in an attempt to determine the identity of the caller, Plaintiff pressed the button for further information and was instructed to leave a voice message with a telephone number by another prerecorded voice.

59. In a further attempt to determine the identity of the caller, Plaintiff left a voice message requesting a call back at telephone number (209) 383-XXXX.

60. On July 28, 2016, shortly after leaving the voice message, Plaintiff received a call on Plaintiff's cellular telephone number, (209) 383-XXXX, from Leif Gates at CPN USA.

61. Mr. Gates informed Plaintiff that the purpose of the call was to offer Plaintiff credit card processing services provided by CPN.

62. On July 28, 2016, after speaking with Mr. Gates, Plaintiff received a follow up email from Leif Gates-Suppah at lgsuppah@cpnusa.com, which identified Mr. Gates as a senior account executive at CPN.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 8

63. Immediately after sending his email, Mr. Gates called Plaintiff again to confirm that he had received the email.

64. Plaintiff promptly responded to Mr. Gates' email on July 28, 2016 with simply the words "not interested."

65. Not to be deterred, Mr. Gates then sent Plaintiff another email marketing CPN's credit card processing services.

66. On or around July 28, 2016, Plaintiff received another telemarketing call on its Oakland cellular telephone number, (510) 351-XXXX, from, or on behalf of, Pivotal Payments.

67. The caller ID showed the telephone call was from (828) 548-6764.

68. When Plaintiff answered the telephone call, there was again a lengthy pause and a click followed by silence before any voice came on the line, which indicated to him that the call was made using an ATDS.

69. Following the lengthy pause and extended silence, a prerecorded message played stating words to the effect that the call was marketing credit card processing services. The called party was instructed to press a button on their telephone for further information.

70. Again, in an attempt to determine the identity of the caller, Plaintiff pressed the button for further information and was instructed to leave a voice message with a telephone number by another prerecorded voice.

71. In a further attempt to determine the identity of the caller, Plaintiff left a voice message requesting a call back at telephone number (510) 385-XXXX.

72. Only July 28, 2016, shortly after leaving the voice message, Plaintiff received a call on Plaintiff's Oakland cellular telephone number, (510) 385-XXXX, from Amanda at CPN USA.

73. Plaintiff has never been a customer of Pivotal Payments, nor has it ever been interested in being a customer of Pivotal Payments.

74. Plaintiff did not provide prior express written consent to receive ATDS generated or prerecorded calls on any of its cellular telephone numbers from, or on behalf of, Pivotal Payments.

75. Plaintiff's privacy has been violated by the above-described calls from, or on behalf of, Pivotal Payments, and they constitute a nuisance as they are annoying and harassing.

76. Pivotal Payments is responsible for making the above-described ATDS-generated and/or prerecorded calls.

77. Pivotal Payments has made a significant number of ATDS generated and/or automated or prerecorded calls to persons on their cellular telephones in California and throughout the entire United States.

78. Pivotal Payments intends to continue to make similar ATDS-generated and/or automated or prerecorded calls to persons on their cellular telephones in California and throughout the entire United States.

79. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Pivotal Payments because their privacy has been violated, they were subjected to annoying and harassing calls that constitute a nuisance, and they were charged for incoming calls. The calls also occupied Plaintiff's and all members of the Class' cellular telephone lines from legitimate communication.

C. **Factual Allegations Regarding Additional Consumer Complaints**

80. Unfortunately, Plaintiff's experience with Pivotal Payments is not unique, as many others have lodged similar complaints after having received telemarketing calls from Pivotal Payments.

81. For example, the website findwhocallsyou.com details the following complaint regarding calls from telephone number (941) 208-8241, which is one of the same caller IDs that appeared on a number of the prerecorded calls from Pivotal Payments to Plaintiff:

> Called my business line. Recorded message trying to sell some sort of merchant processing discount (credit cards). Too cheap to even start message at the beginning.
>
> Posted on 15 Jul 2016.

http://findwhocallsyou.com/9412088241 (last visited September 14, 2016).

82. Similarly, the website 800notes.com also details complaints regarding calls from another caller ID that robocalled Plaintiff, (828) 548-6764:

> **Office Flunky**
> 28 Jul 2016
>
> This number called the office this morning before hours. There was a message waiting, albeit partially cut off, from a robo-caller talking about lower rates for credit card processing.
>
> Caller: BETTER MERCHANT
>
> **Pissed**
> 28 Jul 2016
>
> Voicemail about CC processor not passing along savings. This isn't a business # and I don't accept CC's. Blocked.
>
> Caller: Recording

http://800notes.com/Phone.aspx/1-828-548-6764 (last visited September 14, 2016).

### VI.   CLASS ACTION ALLEGATIONS

83. <u>Class Definition</u>.  Pursuant to CR 23(b)(2) and (b)(3), Plaintiff brings this case as a class action on behalf of a National Class defined as follows:

> All persons to whom: (a) Pivotal Payments and/or a third party acting on Pivotal Payments' behalf, made one or more non-emergency telephone calls; (b) promoting Pivotal Payments' products or services; (c) to their cellular telephone number; (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

Excluded from the Class are Pivotal Payments, any entity in which Pivotal Payments has a controlling interest or that has a controlling interest in Pivotal Payments, and Pivotal Payments' legal representatives, assignees, and successors.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 11

84. <u>Numerosity</u>. The Class is so numerous that joinder of all members is impracticable. On information and belief, Plaintiff alleges that the Class has more than 100 members. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

85. <u>Commonality</u>. There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

    a. Whether Pivotal Payments and/or its affiliates, agents, and/or other persons or entities acting on Pivotal Payments' behalf violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS and/or artificial or prerecorded voice;

    b. Whether Pivotal Payments and/or its affiliates, agents, and/or other persons or entities acting on Pivotal Payments' behalf knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS and/or artificial or prerecorded voice, thus entitling Plaintiff and the Class to treble damages;

    c. Whether Pivotal Payments is liable for ATDS generated and/or automated or prerecorded calls promoting Pivotal Payments' products or services made by Pivotal Payments' affiliates, agents, and/or other persons or entities acting on Pivotal Payments' behalf; and

    d. Whether Pivotal Payments and/or its affiliates, agents, and/or other persons or entities acting on Pivotal Payments' behalf should be enjoined from violating the TCPA in the future.

86. <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Class. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Pivotal Payments and are based on the same legal and remedial theories.

1    87.    <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the Class.
2  Plaintiff has retained competent and capable attorneys with significant experience in complex
3  and class action litigation, including consumer class actions and TCPA class actions.  Plaintiff
4  and its counsel are committed to prosecuting this action vigorously on behalf of the Class and
5  have the financial resources to do so.  Neither Plaintiff nor its counsel has interests that are
6  contrary to or that conflict with those of the proposed Class.

7    88.    <u>Predominance</u>.  Pivotal Payments has engaged in a common course of conduct
8  toward Plaintiff and members of the Class.  The common issues arising from this conduct that
9  affect Plaintiff and members of the Class predominate over any individual issues.  Adjudication
10 of these common issues in a single action has important and desirable advantages of judicial
11 economy.

12   89.    <u>Superiority</u>.  A class action is the superior method for the fair and efficient
13 adjudication of this controversy.  Classwide relief is essential to compel Pivotal Payments to
14 comply with the TCPA.  The interest of individual members of the Class in individually
15 controlling the prosecution of separate claims against Pivotal Payments is small because the
16 damages in an individual action for violation of the TCPA are small.  Management of these
17 claims is likely to present significantly fewer difficulties than are presented in many class claims
18 because the calls at issue are all automated.  Class treatment is superior to multiple individual
19 suits or piecemeal litigation because it conserves judicial resources, promotes consistency and
20 efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.
21 There will be no significant difficulty in the management of this case as a class action.

22   90.    <u>Injunctive and Declaratory Relief is Appropriate</u>.  Pivotal Payments has acted on
23 grounds generally applicable to the Class, thereby making final injunctive relief and
24 corresponding declaratory relief with respect to the Class appropriate on a classwide basis.

## VII. FIRST CLAIM FOR RELIEF
(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))

91. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

92. The foregoing acts and omissions of Pivotal Payments and/or its affiliates, agents, and/or other persons or entities acting on Pivotal Payments' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

93. As a result of Pivotal Payments' and/or its affiliates, agents, and/or other persons or entities acting on Pivotal Payments' behalf's violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

94. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Pivotal Payments and/or its affiliates, agents, and/or other persons or entities acting on Pivotal Payments' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

## VIII. SECOND CLAIM FOR RELIEF
(Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))

95. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

96. The foregoing acts and omissions of Pivotal Payments and/or its affiliates, agents, and/or other persons or entities acting on Pivotal Payments' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for

1 emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class
2 using an ATDS and/or artificial or prerecorded voice.

3      97.     As a result of Pivotal Payments' and/or its affiliates, agents, and/or other persons
4 or entities acting on Pivotal Payments' behalf's knowing and/or willful violations of the TCPA,
5 47 U.S.C. § 227(b)(1)(A), Plaintiff and members of the Class are entitled to treble damages of up
6 to $1,500 for each and every call made to their cellular telephone numbers using an ATDS
7 and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. §
8 227(b)(3).

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on its own behalf and on behalf of all members of the Class, prays for judgment against Pivotal Payments as follows:

    A.     Certification of the proposed Class;

    B.     Appointment of Plaintiff as representative of the Class;

    C.     Appointment of the undersigned counsel as counsel for the Class;

    D.     A declaration that Pivotal Payments and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

    E.     An order enjoining Pivotal Payments and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

    F.     An award to Plaintiff and the Class of damages, as allowed by law;

    G.     An award to Plaintiff and the Class of attorneys' fees and costs, as allowed by law and/or equity;

    H.     Leave to amend this Complaint to conform to the evidence presented at trial; and

    I.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

## X. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 26th day of September, 2016.

          RUKIN HYLAND DORIA & TINDALL LLP

          By:   /s/ Steven M. Tindall
            Steven M. Tindall, SBN #187862
            Email: stindall@rhdtlaw.com
            100 Pine Street, Suite 2150
            San Francisco, California 94111
            Telephone: (415) 421-1800
            Facsimile: (415) 421-1700

            Beth E. Terrell, SBN #178181
            Email: bterrell@terrellmarshall.com
            Jennifer Rust Murray
            Email: jmurray@terrellmarshall.com
            TERRELL MARSHALL LAW GROUP PLLC
            936 North 34th Street, Suite 300
            Seattle, Washington 98103
            Telephone: (206) 816-6603
            Facsimile: (206) 319-5450

            Edward A. Broderick
            Email: ted@broderick-law.com
            Anthony I. Paronich
            Email: anthony@broderick-law.com
            BRODERICK & PARONICH, P.C.
            99 High Street, Suite 304
            Boston, Massachusetts 02110
            Telephone: (617) 738-7080
            Facsimile: (617) 830-0327

            Matthew P. McCue
            E-mail: mmccue@massattorneys.net
            THE LAW OFFICE OF MATTHEW P. McCUE
            1 South Avenue, Suite 3
            Natick, Massachusetts 01760
            Telephone: (508) 655-1415
            Facsimile: (508) 319-3077

          *Attorneys for Plaintiff*