UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., <br><br> Plaintiff, <br><br> v. <br><br> PIVOTAL PAYMENTS, INC., <br><br> Defendant. | Case No. 16-cv-05486-JCS <br><br> **ORDER DENYING MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)** <br><br> Re: Dkt. No. 15 |

## I. INTRODUCTION

Plaintiff Abante Rooter and Plumbing, Inc. ("Abante") brings this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq.*, alleging that Defendant Pivotal Payments, Inc. ("Pivotal") was responsible for "robocalls" placed to several cellular telephone numbers used by Abante to communicate with its customers. Pivotal brings a Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Motion") asserting, *inter alia*, that Abante's complaint is subject to dismissal for lack of subject matter jurisdiction because Abante has not demonstrated the existence of Article III standing under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). The Court finds that the Motion is suitable for determination without oral argument pursuant to Civil Local Rule 7-1(b) and therefore vacates the motion hearing set for Friday, March 3, 2017 at 9:30 a.m. The Initial Case Management Conference that was set for the same time **is rescheduled to occur at 2:00 p.m. rather than at 9:30 a.m. on March 3, 2017.** For the reasons stated below, the Motion is DENIED.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. The Complaint

Abante is a corporation based in California, with its principal place of business in Alameda County, California. Complaint ¶ 2. It is a "small plumbing company that provides an array of commercial and residential draining and plumbing services, including emergency draining and plumbing services" in the San Francisco Bay area. *Id*. ¶ 23. Abante uses several cellular telephone numbers that are assigned to different cities around the San Francisco Bay Area, including (209) 383-XXXX, (925) 253-XXXX, and (510) 351-XXXX, to conduct its business. *Id*. ¶ 24. Abante "receives important, and often urgent, calls from current and potential customers on each of the above-listed cellular telephone numbers." *Id*. ¶ 26. According to Abante, "because Plaintiff's business provides emergency services, every call made to its telephone number could be [a] new customer with a crisis situation." *Id*. ¶ 28.

Abante alleges that Pivotal "is a leading provider of technology-driven global payment processing solutions for small to large enterprises.'" *Id*. ¶ 14 (quotation omitted). One of its divisions is Capital Processing Network or CPN ("CPN"), which Pivotal acquired in 2014. *Id*. ¶ 16. According to Abante, CPN "provides complete merchant services and credit card processing to point-of-sale businesses across the U.S." *Id*. (internal quotation omitted). Abante further alleges that "[o]ne of [Pivotal's] strategies for marketing its credit card processing services involves the use of an automatic telephone dialing system ('ATDS') to solicit business." *Id*. ¶ 18. Abante alleges that Pivotal uses this ATDS to make unsolicited calls that play recorded messages to cellular telephone numbers. *Id*. ¶¶ 20-21. The recipients of these calls – including Abante – have not consented to receive such calls. *Id*.

Abante alleges the following specific facts regarding the "robocalls" that are the subject of this action, which the Court repeats verbatim because Pivotal asserts they are not sufficient to support an inference that the calls were made by or on behalf of Pivotal:

> 29. On or around July 15, 2016, Plaintiff received a telemarketing call on its cellular telephone number, (925) 253-XXXX, from, or on behalf of, Pivotal Payments.

30. The caller ID showed the telephone call was from (941) 208-8241.

31. When the call was answered, there was a lengthy pause and a click followed by silence before any voice came on the line, which indicated to him that the call was made using an ATDS.

32. Following the lengthy pause and extended silence, a prerecorded message played, stating words to the effect that the call was marketing credit card processing services. The called party was instructed to press a button on their telephone for further information.

33. In an attempt to determine the identity of the caller, Plaintiff pressed the button for further information and was instructed to leave a voice message with a telephone number by another prerecorded voice.

34. In a further attempt to determine the identity of the caller, Plaintiff left a voice message requesting a call back at telephone number (510) 534-XXXX.

35. Shortly after leaving the voice message, Plaintiff received a call on Plaintiff's cellular telephone number, (925) 253-XXXX, from a person who identified himself as Leif Gates.

36. Shortly after Mr. Gates identified himself, the call unintentionally disconnected.

37. Later on July 15, 2016, Plaintiff received a telemarketing call on its cellular telephone number, (209) 383-XXXX, from, or on behalf of, Pivotal Payments.

38. The caller ID showed the telephone call was from (941) 208-8241.

39. When the call was answered, there was again a lengthy pause and a click followed by silence before any voice came on the line, which indicated to him that the call was made using an ATDS.

40. Following the lengthy pause and extended silence, a prerecorded message played stating words to the effect that the call was marketing credit card processing services. The called party was instructed to press a button on their phone for further information.

41. Again, in an attempt to determine the identity of the caller, Plaintiff pressed the button for further information and was instructed to leave a voice message with a telephone number by another prerecorded voice.

42. In a further attempt to determine the identity of the caller, Plaintiff left a voice message requesting a call back at telephone number (510) 459-XXXX.

43. After leaving the voice message, Plaintiff received a call on Plaintiff's cellular telephone number, (510) 459-XXXX, on July 18, 2016 from a person who identified herself as "Amanda of CPN USA."

44. Amanda informed Plaintiff that the purpose of the call was to offer Plaintiff credit card processing services provided by CPN.

45. On July 18, 2016, after speaking with Amanda, Plaintiff received a follow up email from Amanda Hanf at afanf@cpnusa.com, which identified Ms. Hanf as a senior account executive at CPN.

46. The email further encouraged Plaintiff to "check out our website at www.cpnusa.com" and detailed the cost saving credit card processing services CPN could provide.

47. On August 19, 2016, Amanda called Plaintiff twice to market CPN's credit card processing services.

48. In response to these two telephone calls from Amanda, Plaintiff requested that CPN cease calling.

49. On or around July 19, 2016, Plaintiff received another telemarketing call on its cellular telephone number, (510) 351-XXXX, from, or on behalf of, Pivotal Payments.

50. The caller ID showed the telephone call was from (251) 263-0995.

51. When Plaintiff answered the telephone call, there was again a lengthy pause and a click followed by silence before any voice came on the line, which indicated to him that the call was made using an ATDS.

52. Following the lengthy pause and extended silence, a prerecorded message played stating words to the effect that the call was marketing credit card processing services. The called party was instructed to press a button on their telephone for further information.

53. Again, in an attempt to determine the identity of the caller, Plaintiff pressed the button for further information and was instructed to leave a voice message with a telephone number by another prerecorded voice.

54. On or around July 28, 2016, Plaintiff received another telemarketing call on its cellular telephone number, (925) 253-XXXX, from, or on behalf of, Pivotal Payments.

55. The caller ID showed the telephone call was from (828) 548-6764.

56. When Plaintiff answered the telephone call, there was again a lengthy pause and a click followed by silence before any voice came on the line, which indicated to him that the call was made using an ATDS.

57. Following the lengthy pause and extended silence, a prerecorded message played stating words to the effect that the call was marketing credit card processing services. The called party was instructed to press a button on their telephone for further information.

58. Again, in an attempt to determine the identity of the caller, Plaintiff pressed the button for further information and was instructed to leave a voice message with a telephone number by another prerecorded voice.

59. In a further attempt to determine the identity of the caller, Plaintiff left a voice message requesting a call back at telephone number (209) 383-XXXX.

> 60. On July 28, 2016, shortly after leaving the voice message, Plaintiff received a call on Plaintiff's cellular telephone number, (209) 383-XXXX, from Leif Gates at CPN USA.
>
> 61. Mr. Gates informed Plaintiff that the purpose of the call was to offer Plaintiff credit card processing services provided by CPN.
>
> 62. On July 28, 2016, after speaking with Mr. Gates, Plaintiff received a follow up email from Leif Gates-Suppah at lgsuppah@cpnusa.com, which identified Mr. Gates as a senior account executive at CPN.
>
> 63. Immediately after sending his email, Mr. Gates called Plaintiff again to confirm that he had received the email.
>
> 64. Plaintiff promptly responded to Mr. Gates' email on July 28, 2016 with simply the words "not interested."
>
> 65. Not to be deterred, Mr. Gates then sent Plaintiff another email marketing CPN's credit card processing services.
>
> 66. On or around July 28, 2016, Plaintiff received another telemarketing call on its Oakland cellular telephone number, (510) 351-XXXX, from, or on behalf of, Pivotal Payments.
>
> 67. The caller ID showed the telephone call was from (828) 548-6764.
>
> 68. When Plaintiff answered the telephone call, there was again a lengthy pause and a click followed by silence before any voice came on the line, which indicated to him that the call was made using an ATDS.
>
> 69. Following the lengthy pause and extended silence, a prerecorded message played stating words to the effect that the call was marketing credit card processing services. The called party was instructed to press a button on their telephone for further information.
>
> 70. Again, in an attempt to determine the identity of the caller, Plaintiff pressed the button for further information and was instructed to leave a voice message with a telephone number by another prerecorded voice.
>
> 71. In a further attempt to determine the identity of the caller, Plaintiff left a voice message requesting a call back at telephone number (510) 385-XXXX.
>
> 72. Only July 28, 2016, shortly after leaving the voice message, Plaintiff received a call on Plaintiff's Oakland cellular telephone number, (510) 385-XXXX, from Amanda at CPN USA.

*Id.* ¶¶ 29-72.

Abante alleges that it has "never been a customer of Pivotal Payments, nor has it ever been interested in being a customer of Pivotal Payments." *Id*. ¶ 73. It further alleges that it "did not provide prior express written consent to receive ATDS generated or prerecorded calls on any of its cellular telephone numbers from, or on behalf of, Pivotal Payments." *Id*. ¶ 74. Finally, it alleges

5

1  that its "privacy has been violated by the above-described calls from, or on behalf of, Pivotal

2  Payments, and they constitute a nuisance as they are annoying and harassing." *Id*. ¶¶ 75-76.

3    Based on these factual allegations, Abante asserts two claims under the TCPA: 1) a claim

4  under 47 U.S.C. § 227(b)(3)(B) seeking $500 for each call that violates 47 U.S.C. § 227(b)(1)(A)

5  and an injunction prohibiting further violations of the TCPA; and 2) a claim under 47 U.S.C. §

6  227(b)(3) for treble damages of up to $1,500 for each call that constitutes a knowing and/or willful

7  violation of 47 U.S.C. § 227(b)(1)(A).

### B. The Motion

9    In the Motion, Pivotal contends Abante has not alleged a concrete injury to demonstrate

10 that it has standing under Article III of the U.S. Constitution and therefore, that the complaint

11 should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of

12 subject matter jurisdiction. Motion at 2-15. Pivotal relies primarily upon two out-of-district cases

13 in support of this argument, *Romero v. Dep't Stores Nat'l Bank*, No. 15-CV-193-CABMDD, 2016

14 WL 4184099, at *4 (S.D. Cal. Aug. 5, 2016) and *Ewing v. SQM US, Inc*., No. 3:16-CV-1609-

15 CAB-JLB, 2016 WL 5846494, at *2 (S.D. Cal. Sept. 29, 2016). In these cases, Pivotal contends,

16 the courts found that there was no concrete injury that was actually caused by alleged TCPA

17 violations because any annoyance caused by the calls or charges incurred by the recipients would

18 have been experienced even if the calls had been made manually instead by use of an ATDS. *Id*.

19 at 3-4. Similarly here, Pivotal asserts, Abante cannot show that any concrete injury resulted from

20 the fact that the calls it allegedly received were placed using an ATDS rather than by making those

21 same calls by dialing manually. *Id*. at 4. Pivotal further contends that to the extent Abante alleges

22 an invasion of privacy to demonstrate concrete injury, that allegation fails because a corporation

23 has no right to privacy. *Id*. at 4-5. Finally, Pivotal argues that any harm Abante alleges is *de

24 minimis* and insufficient to establish standing because Abante only identified three telephone calls

25 it contends violated the TCPA. *Id*. at 5.

26   Pivotal also argues that Abante fails to state a claim under Rule 12(b)(6) because it has not

27 alleged sufficient facts to support a plausible inference that Pivotal "made" the robocalls that

28 Abante allegedly received. *Id*. at 6-7. In addition, Pivotal contends, Abante's claims fail because

under "47 U.S.C. § 227(b)(5),"[2] it must allege that it received more than one robocall from Defendant to state a claim. *Id*. at 7. According to Pivotal, because Abante alleged that only one call was made to its 209-383-XXXX number, the claims fail as to that number. *Id*.

Finally, Pivotal argues that the Court should strike certain allegations in the Complaint under Rule 12(f) of the Federal Rules of Civil Procedure on the basis that they are irrelevant. *Id*. at 7-8. In particular, it argues that the Court should strike allegations in the Complaint relating to calls that were made to Abante's 209-383-XXXX number and alleging its right to privacy was invaded for the reasons stated above. *Id*.

## III.   ANALYSIS

### A.   Subject Matter Jurisdiction

#### 1. Legal Standard Under Rule 12(b)(1)

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a district court must dismiss an action if it lacks jurisdiction over the subject matter of the suit. *See* Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (internal quotation marks and citations omitted).   On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject matter jurisdiction.   *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).   A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).   In evaluating a facial challenge to subject matter jurisdiction, the court accepts the factual allegations in the complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001).   Where a defendant brings a factual challenge, on the other hand, "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *White*, 227 F.3d at 1242 (citation omitted).

---

[2] As noted below, this subsection does not exist.

7

Here, Pivotal brings a facial challenge to subject matter jurisdiction and therefore, the Court accepts the factual allegations in the complaint as true.

### *2.* **Legal Standards Governing Article III Standing**

"[T]he irreducible constitutional minimum of [Article III] standing" contains three elements, namely, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The dispute here relates to the "injury in fact" requirement, which the Court has described as the "'[f]irst and foremost' of standing's three elements." *Id*. (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560).

In *Spokeo*, the Court emphasized that concreteness and particularization are separate requirements. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560 n. 1). Even where this requirement is met, however, the injury-in-fact requirement will not be satisfied unless the injury is also concrete. *Id*. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (citing Black's Law Dictionary 479 (9th ed. 2009)). An injury may be "concrete" even if it is intangible, the *Spokeo* Court explained, and "in determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id*. at 1549. With respect to history, the Court said, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. (citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 775-777 (2000)). The judgment of Congress is also "instructive and important" because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id*. Thus, "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id*.

1  (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring)).

2  Nonetheless, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 1549. Thus, while a procedural violation "can be sufficient in some circumstances to constitute injury in fact," for example, where there is a "risk of real harm," a "*bare* procedural violation, divorced from any concrete harm" does not "satisfy the injury-in-fact requirement of Article III." *Id*. (emphasis added).

### 3. Discussion

In the wake of the Supreme Court's decision in *Spokeo,* numerous courts have addressed whether a plaintiff's allegations that it received ATDS telephone calls in violation of the TCPA is sufficient to establish Article III standing. *Juarez v. Citibank, N.A.,* No. 16-cv-1984 WHO, 2016 WL 4547914, at *2 (N.D. Cal. Sept. 1, 2016). The vast majority of courts that have addressed this question have concluded that the invasion of privacy, annoyance and wasted time associated with robocalls is sufficient to demonstrate concrete injury. *See id.* at *3; *Hewlett v. Consol. World Travel, Inc*., No. CV 2:16-713 WBS AC, 2016 WL 4466536, at *2 (E.D. Cal. Aug. 23, 2016) ("Courts have consistently held that allegations of nuisance and invasion of privacy in TCPA actions are sufficient to state a concrete injury under Article III"); *LaVigne v. First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ-LF, 2016 WL 6305992, at *6 (D.N.M. Oct. 19, 2016) ("The list [of cases in which Courts have found that TCPA violations gave rise to standing] goes on, with each [court] finding that the bare statutory violation of the TCPA constitutes sufficient "concrete" injury for Article III standing"); *Booth v. Appstack, Inc*., No. C13-1533JLR, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016), order clarified, No. C13-1533JLR, 2016 WL 3620798 (W.D. Wash. June 28, 2016)("In *Spokeo*, the 'injury' Plaintiffs incurred was arguably merely procedural and thus non-concrete. . . . In contrast, the TCPA and WADAD violations alleged here, if proven, required Plaintiffs to waste time answering or otherwise addressing widespread robocalls"); *Mey v. Got Warranty, Inc*., 193 F. Supp. 3d 641, 644 (N.D.W. Va. 2016) ("This Court finds that unwanted phone calls cause concrete harm"); *Cour v. Life360, Inc*., Civ.

No. 16-805 TEH, 2016 WL 4039279, at *2 (N.D. Cal. July 28, 2016) (finding that plaintiff "allege[d] a concrete injury sufficient to confer Article III standing" because he alleged that "[the defendant] invaded his privacy"); *Rogers v. Capital One Bank (USA), N.A.*, No. 15-cv-4016, 2016 WL 3162592, *2 (N.D. Ga. Jun. 03, 2016) ("a violation of the TCPA is a concrete injury. Because the Plaintiffs allege that the calls were made to their personal cell phone numbers, they have suffered particularized injuries because their cell phone lines were unavailable for legitimate use during the unwanted calls.").

        The undersigned agrees with the reasoning of the cases that have found that a violation of the TCPA is sufficient to satisfy the concrete injury requirement where intangible harms are alleged, as they are here. As the court in *Mey* explained, "[o]ne of the ways that *Spokeo* identifies to establish that an intangible injury is concrete is to show that it 'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" 193 F. Supp. 3d at 645 (quoting *Spokeo*, 136 S. Ct. at 1549). One such intangible harm is "intrusion upon and occupation of the capacity of the plaintiff's cell phone." *Id*. The *Mey* court reasoned that "[t]he harm recognized by the ancient common law claim of trespass to chattels— the intentional dispossession of chattel, or the use of or interference with a chattel that is in the possession of another, is a close analog for a TCPA violation." *Id.* (citing Restatement (Second) of Torts § 217 (1965)); *see also LaVigne*, 2016 WL 6305992, at *6 (agreeing with the reasoning of *Mey* that intrusion upon and occupation of the capacity of the consumer's cell phone is a concrete injury that results from TCPA violations). Courts have also recognized that the time that is wasted as a result of TCPA violations constitutes concrete injury. *See Mey*, 193 F. Supp. 3d at 648 (citing *Booth v. Appstack, Inc*., 2016 WL 3030256, *5 (W.D.Wash. May 25, 2016) in support of conclusion that under *Spokeo*,"wasting the recipient's time is a concrete injury that satisfies Article III"). Because Abante alleges facts showing an intrusion on the occupation and capacity of its cells phones and waste of time, it has alleged a concrete injury for the purposes of Article III standing.[3]

---

[3] Because the Court finds that Abante has demonstrated concrete injury even apart from the alleged invasion of its privacy rights, the Court need not reach Pivotal's argument that Abante

The Court rejects Pivotal's reliance on *Romero v. Dep't Stores Nat'l Bank*, No. 15-CV-193-CABMDD, 2016 WL 4184099, at *4 (S.D. Cal. Aug. 5, 2016) and *Ewing v. SQM US, Inc.*, No. 3:16-CV-1609-CAB-JLB, 2016 WL 5846494, at *2 (S.D. Cal. Sept. 29, 2016). In *Romero*, the court found that a debtor did not have standing to assert claims against a debt collector who had used an ATSD to dial her number without her consent, in violation of the TCPA, because she "would have been no better off had Defendants dialed her telephone number manually" and therefore, any harm she suffered was "unconnected to the alleged TCPA violations." 2016 WL 4184099, at *6. The court in *Ewing* adopted the same reasoning. *See* 2016 WL 5846494, at *2 (S.D. Cal. Sept. 29, 2016) ("Plaintiff does not, and cannot, allege that Defendants' use of an ATDS to dial his number caused him to incur a charge that he would not have incurred had Defendants manually dialed his number, which would not have violated the TCPA. Therefore, Plaintiff did not suffer an injury in fact traceable to Defendants' violation of the TCPA and lacks standing to make a claim for the TCPA violation here.").

The undersigned agrees with the analysis in *LaVigne*, in which the court found that the reasoning of the *Romero* court was not consistent with *Spokeo*. In particular, the court in *LaVigne* explained:

> Under [*Romero*'s] rather draconian analysis, a plaintiff would find it almost impossible to allege a harm as a result of these robocalls. Worse, the case ignores the existence of intangible harms that have been recognized in the legislative history and in the case law. The Court agrees with Plaintiff that *Romero* is an outlier in holding that a violation of the TCPA is a bare procedural violation and that some additional harm must be shown to establish standing. *Romero* also had an inexplicable twist. In its injury-in-fact requirement, the court required that the injury alleged as a result of a pre-recorded call must be shown to be different and distinct from any injury that would have resulted from a manually dialed call. Defendants have taken up this line of argument as well in their brief, arguing that Plaintiff lacks standing because she does not offer evidence of injury caused specifically by the use of an ATDS as opposed to a manually dialed call. Doc. 48 at 7-8.
>
> Plaintiff sizes up Defendant's position by describing it as an argument which conflates the *means* through which it (allegedly) violated the TCPA with the *harm* resulting from that alleged violation. . . . The Court agrees.

---

cannot assert a violation of privacy in support of standing because it is a corporation.

*LaVigne*, 2016 WL 6305992, at *7 (emphasis in original) (internal quotation and citation omitted).

Finally, the Court rejects Pivotal's argument that the concrete injury requirement is not satisfied because the harm alleged is *de minimis*. As the court explained in *LaVigne*, "Article III requirements for an injury-in-fact do not contain a 'minimum' cost or harm threshold. Regardless of how small the harm is, it is actual and it is real." 2016 WL 6305992, at *6.

For these reasons, the Court concludes that Abante has sufficiently alleged concrete injury for the purposes of demonstrating the existence of Article III standing.

### B. Sufficiency of Allegations

#### 1. Legal Standard Under Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a

[pleading] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### 2. Whether Abante Has Alleged Facts Sufficient to Support a Reasonable Inference that Pivotal "Made" the Calls that Allegedly Violated the TCPA

"The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). "A plaintiff need not somehow have inside knowledge of a defendant's operations and equipment to survive dismissal under Rule 12(b)(6), rather, he or she merely must proffer factual allegations that support a reasonable inference that an ATDS was used." *Brown v. Collections Bureau of Am., Ltd*, 183 F. Supp. 3d 1004, 1005 (N.D. Cal. 2016). Similarly, at the pleading stage of the case, a plaintiff need only allege facts supporting a *plausible* inference that the defendant is responsible for the robocalls that the plaintiff allegedly received on its cellular telephones. *See Morris v. SolarCity Corp.,* No. 15-CV-05107-RS, 2016 WL 1359378, at *2 (N.D. Cal. Apr. 6, 2016) ("While it certainly is plausible that the calls could have been made by some such third party, it is not Morris's burden at this juncture to come forward with allegations or evidence conclusively negating the possibility that Solar City neither made the calls itself nor can be held indirectly liable. He has alleged facts from which SolarCity's direct or indirect liability may plausibly be inferred."). Abante has alleged detailed facts from which a plausible inference can be drawn that Pivotal was responsible for the robocalls made to Abante. That is all that is required at this stage of the case.

### 3. Whether Abante Fails to State a Claim Because it Alleges Only One Call Was Made to One of its Cellular Telephone Numbers

Pivotal also contends Abante cannot state a claim because as to one of the cellur telephone numbers, only one robocall is alleged to have been received. Apparently, this argument is based on 47 U.S.C. § 227(c)(5), which applies to TCPA violations based on calls made to residential

telephone subscribers, not cellular telephones. As Pivotal implicitly concedes, Abante does not assert any such claims here and therefore, that argument fails. *See* Reply at 11 n. 4.

### C.  Request to Strike

Pivotal asks the Court to strike certain allegations on the basis that they are irrelevant. The Court declines that request. Motions to strike under Rule 12(f) are disfavored. The Court has rejected Pivotal's argument under § 227(c)(5). Moreover, the Court has not yet addressed the question of whether Abante can assert a right to privacy. Therefore, the remedy Pivotal requests is unwarranted.

## IV.  CONCLUSION

For the reasons stated above, the Motion is DENIED in its entirety.

**IT IS SO ORDERED.**

Dated: February 24, 2017

_____
JOSEPH C. SPERO
Chief Magistrate Judge