1  Steven M. Tindall, SBN #187862
   Email: smt@classlawgroup.com
2  GIBBS LAW GROUP LLP
   505 14th Street, Suite 1110
3  Oakland, California 94612
   Telephone: (510) 350-9700
4  Facsimile: (510) 350-9701

5  Beth E. Terrell, SBN #178181
   Email: bterrell@terrellmarshall.com
6  Jennifer Rust Murray, *Admitted Pro Hac Vice*
   Email: jmurray@terrellmarshall.com
7  936 North 34th Street, Suite 300
   Seattle, Washington 98103
8  Telephone: (206) 816-6603
   Facsimile: (206) 319-5450

9
   [Additional Counsel Appear on Signature Page]
10
   *Attorneys for Plaintiff and the Proposed Class*
11
                UNITED STATES DISTRICT COURT
12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13  ABANTE ROOTER AND PLUMBING,        NO.  3:16-cv-05486-JCS
    INC., individually and on behalf of all others
14  similarly situated,                 **PLAINTIFF'S NOTICE OF MOTION
                                         AND MEMORANDUM OF POINTS AND
15              Plaintiff,               AUTHORITIES IN SUPPORT OF
                                         UNOPPOSED MOTION FOR
16       v.                             PRELIMINARY APPROVAL OF CLASS
                                         ACTION SETTLEMENT**
17  PIVOTAL PAYMENTS INC., d/b/a/
    CAPITAL PROCESSING NETWORK and      JURY TRIAL DEMAND
18  CPN,
                                         Complaint Filed:  September 26, 2016
19              Defendant.
                                         DATE:       December 1, 2017
20                                       TIME:       9:30 a.m.
                                         LOCATION:   Courtroom G - 15th Floor
21

22

23

1  TO:  THE CLERK OF THE COURT; and

2  TO:  DEFENDANT PIVOTAL PAYMENTS INC., d/b/a/ CAPITAL PROCESSING
        NETWORK and CPN. AND THEIR ATTORNEYS OF RECORD:

3

4        PLEASE TAKE NOTICE that on December 1, 2017, at 9:30 a.m., in Courtroom G - 15th

5  Floor, of the San Francisco Courthouse for the U.S. District Court for the Northern District of

6  California, 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiff will move for

7  preliminary approval of a class action settlement.

8        This motion will be based on: this Notice of Motion, the following Memorandum of

9  Points and Authorities, the Declarations of Jennifer Rust Murray, Anthony I. Paronich, Matthew

10  P. McCue, Fred Heidarpour, and Steven M. Tindall; the records and file in this action; and on

11  such other matter as may be presented before or at the hearing of the motion.

12

13

14

15

16

17

18

19

20

21

22

23

1

**TABLE OF CONTENTS**

2

**Page No.**

3   TABLE OF AUTHORITIES ................................................................................................. iii

4   I.       INTRODUCTION ................................................................................................. 1

5   II.      BACKGROUND ................................................................................................... 2

6            A.      Plaintiff's claims ................................................................................... 2

7            B.      The litigation and settlement negotiations ............................................. 3

8            C.      Terms of the settlement ......................................................................... 4

9                    1.      The proposed settlement class ................................................... 4

10                   2.      The settlement fund................................................................... 5

11                   3.      Release ..................................................................................... 6

12                   4.      The settlement administrator and settlement administration costs ........... 6

13                   5.      Attorneys' fees and costs .......................................................... 7

14                   6.      Service award ........................................................................... 7

15  III.     ARGUMENT AND AUTHORITY ....................................................................... 8

16           A.      The proposed settlement class should be preliminarily certified...................... 10

17                   1.      The class satisfies the requirements of Rule 23(a)................................. 10

18                   2.      The class satisfies the requirements of Rule 23(b)(3)............................ 12

19           B.      The proposed settlement should be preliminarily approved ............................... 13

20                   1.      The strength of Plaintiff's case ................................................. 13

21                   2.      The risk, expense, complexity, and likely duration of further litigation ........................................................................... 14

22

23                   3.      The risk of maintaining class action status through trial ....................... 15

1                4.      The amount offered in settlement ............................................................ 15

2                5.      The extent of discovery completed and the stage of proceedings .......... 17

3                6.      The experience and views of counsel ..................................................... 18

4                7.      The presence of a governmental participant ........................................... 18

5                8.      The reaction of class members to the proposed settlement.................... 19

6                9.      Lack of collusion among the parties ...................................................... 19

7        C.      The proposed notice plan should be approved .................................................... 20

8                1.      The settlement provides for the best method of notice practicable

9                     under the circumstances ................................................................ 21

10              2.      The proposed form of notice adequately informs class members of
                     the settlement and their rights ................................................... 21

11       D.      The schedule for final approval ......................................................................... 22

12  IV.    CONCLUSION....................................................................................................... 22

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Adams v. AllianceOne Receivables Mgmt.*,
No. 08-cv-248 (S.D. Cal. Sept. 28, 2012)........................................................................ 17

*Agne v. Papa John's Int'l, Inc.*,
286 F.R.D. 559 (W.D. Wash. 2012) ...................................................................... 11, 13

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997).................................................................................................. 9

*Bee, Denning, Inc. v. Capital Alliance Group*,
310 F.R.D. 614 (S.D. Cal. 2015) ........................................................................ 12, 13

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015).............................................................................. 18

*Betorina v. Randstad US, L.P.*,
No. 15-cv-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017)...................... 9, 19

*Booth v. Appstack, Inc.*,
No. C13–1533JLR, 2015 WL 1466247 (W.D. Wash. March 30, 2015) ...................... 12

*Celano v. Marriott Int'l, Inc.*,
242 F.R.D. 544 (N.D. Cal. 2007)................................................................................ 10

*Chavez v. PHC Corp.*,
No. 13-cv-01797-LHK, 2015 WL 581382 (N.D. Cal. Feb. 11, 2015) .......................... 22

*Churchill Village, L.L.C. v. General Electric*,
361 F.3d 566 (9th Cir. 2004) ...................................................................................... 9

*Connor v. JPMorgan Chase Bank, N.A.*,
No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015) .................................................. 17

*Cotter v. Lyft, Inc.*,
193 F. Supp. 3d 1030 (N.D. Cal. 2016) ........................................................................ 9

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
No. C 06-3903 TEH, 2008 WL 7863877 (N.D. Cal. Oct. 22, 2008)................................ 8

*Custom LED, LLC v. eBay, Inc.*,
  No. 12-cv-00350-JST, 2014 WL 2916871 (N.D. Cal. June 24, 2014) .......................... 15

*Dyer v. Wells Fargo Bank, N.A.*,
  No. 13-cv-02858-JST, 2014 WL 1900682 (N.D. Cal. May 12, 2014) .......................... 17

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ................................................................................ 10, 11

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................ 9, 11, 17

*Harris v. Vector Marketing Corp.*,
  No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .......................... 19

*Hawthorne v. Umpqua Bank*,
  o. 11-cv-6700-JST, 2014 WL 4602572 (N.D. Cal. Sept. 15, 2014) .............................. 22

*Ikuseghan v. Multicare Health Sys.*,
  No. C14-5539 BHS, 2015 WL 4600818 (W.D. Wash. July 29, 2015).......................... 12

*In re Bluetooth Headset Products Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................................................... 20

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................................................... 17

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ..................................................................................... 7

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................................... 8

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*,
  MDL No. 2672 CRB (JSC), 2017 WL 2212783 (N.D. Cal. May 17, 2017) ................... 8

*Knight v. Red Door Salons, Inc.*,
  No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ..................................... 18

*Krakauer v. Dish Network L.L.C.*,
  311 F.R.D. 384 (M.D.N.C. 2015) .............................................................................. 12

*Kristensen v. Credit Payment Servs.*,
  12 F. Supp. 3d 1292 (D. Nev. 2014) .......................................................................... 10

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) ........................................................................... 15

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
    244 F.3d 1152 (9th Cir. 2001) ........................................................................... 13

*Makaron v. GE Security Mfg. Co.,*
    No. CV-14-1274-GW (AGRx), 2015 WL 3526253 (C.D. Cal. May 18, 2015) ............. 14

*Manouchehri v. Styles for Less, Inc.,*
    No. 14-cv-2521 NLS, 2016 WL 3387473 (S.D. Cal. June 20, 2016) ........................... 17

*Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................... 15

*Officers for Justice v. Civil Service Commission of City & County of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) ............................................................................. 8

*Philips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ......................................................................................... 22

*Powers v. Eichen,*
    229 F.3d 1249 (9th Cir. 2000) ........................................................................... 20

*Rodriguez v. West Publishing Corp.,*
    563 F.3d 948 (9th Cir. 2009) ................................................................... 7, 8, 15, 19

*Schaffer v. Litton Loan Servicing, LP,*
    No. CV 05-07673 MMM (JCx), 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ......... 21

*Thomas v. Taco Bell Corp.,*
    879 F. Supp. 2d 1079 (C.D. Cal. 2012) .............................................................. 14

*Tyson Foods, Inc. v. Bouaphakeo,*
    136 S. Ct. 1036 (2016) ..................................................................................... 12

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ............................................................................. 8

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ......................................................................................... 10

*Wellens v. Sankyo,*
    No. C 13-00581 WHO (DMR), 2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) ............. 7

*Whitaker v. Bennett Law, PLLC*,
    No. 13-3145, 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014) ..................................... 10, 11

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ........................................................................... 13

**FEDERAL RULES**

Fed. R. Civ. P. 23(a)(3) ............................................................................................ 11

Fed. R. Civ. P. 23(a)(4) ............................................................................................ 11

Fed. R. Civ. P. 23(b)(3) ............................................................................................ 13

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................... 20

Fed. R. Civ. P. 23(e)(1) ............................................................................................ 20

# I.  INTRODUCTION

Plaintiff Abante Rooter and Plumbing, Inc. ("Plaintiff") moves for preliminary approval of a proposed settlement with defendant Pivotal Payments Inc. ("Pivotal"). Plaintiff asserted two claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227, against Pivotal. After defeating Pivotal's motion to dismiss and engaging in targeted discovery of Pivotal and third party EPLJ Enterprises, LLC, the entity that Plaintiff alleges made the calls at issue on Pivotal's behalf, Plaintiff was armed with a sufficient understanding of the strengths and weaknesses of his case to enter into settlement negotiations. The parties' discussions were facilitated by Bruce Friedman, Esq. of JAMS in a full-day mediation and over the course of several additional weeks thereafter. The parties have now documented a proposed settlement and request Court approval to notify class members of its terms.

Pivotal has agreed to a $9 million cash settlement fund to be distributed pro rata to class members who submit a simple claim form. The settlement fund will also be used to pay the attorneys' fee award, a service award, and all settlement administration costs approved by the Court. The amount each class member will receive depends on the number of claims submitted. For example, if 10% of the 1,902,283 class members file claims, each participating class member will receive approximately $29. Based on their experience with claims rates in TCPA and other class settlements, Class Counsel and the proposed Settlement Administrator estimate that each participating class member will receive between $20 and $60. The settlement is favorable to class members because they will receive compensation for the telemarketing calls they received without the expense and delay of continued litigation—and avoid the risk of no compensation at all.

1    Plaintiff and its counsel believe the proposed settlement is favorable for the class.

2    Plaintiff respectfully requests that the Court preliminarily approve the parties' Settlement

3    Agreement—attached as Exhibit 1 to the accompanying Declaration of Jennifer Rust Murray—

4    and enter an order that (1) certifies the proposed settlement class for settlement purposes only;

5    (2) grants preliminary approval of the proposed settlement; (3) directs notice to be disseminated

6    to class members in the form and manner proposed by the parties; (4) appoints Epiq Class Action

7    & Claims Solutions, Inc. ("Epiq") to serve as the Settlement Administrator; and (5) sets a

8    schedule and hearing date for final approval of the settlement and related deadlines.

9                                    **II.  BACKGROUND**

10   **A.   Plaintiff's claims.**

11   Pivotal provides merchant processing services to businesses nationwide. Plaintiff alleges

12   that Pivotal hired EPLJ Enterprises, LLC, a business operated by Gordon Rose, to make calls by

13   automatic telephone dialing system ("ATDS") to market its credit card processing services.

14   Plaintiff alleges that the recipients of these calls, including Plaintiff, did not consent to receive

15   them. ECF No. 1 ¶¶ 20-21. Plaintiff alleges it received multiple calls made on Pivotal's behalf on

16   its cell phones. *Id.* ¶¶ 22-72.  Plaintiff never consented to receive the calls. *Id.* ¶¶ 73-74.

17   Plaintiff filed a proposed class action complaint on September 26, 2016, alleging that

18   Pivotal violated the TCPA's prohibition of calls to cell phones using an ATDS or artificial or

19   prerecorded voice and that Pivotal and the persons and entities acting on its behalf acted

20   knowingly or willfully. *Id.* ¶¶ 91-97. Plaintiff sought damages in the amount of $500 for every

21   illegal call and sought to treble those damages because of Pivotal's alleged knowing or willful

22   violations of the TCPA. *Id.*

23   The proposed settlement resolves both of Plaintiff's TCPA claims against Pivotal.

**B.    The litigation and settlement negotiations.**

The parties negotiated this settlement a year after Plaintiff filed its complaint. During that time, they engaged in sufficient litigation to have a solid understanding of the strengths and weaknesses of their positions.

Pivotal filed a motion to dismiss Plaintiff's claims on November 25, 2016. ECF No. 15. Plaintiff successfully opposed the motion. ECF No. 19. In denying Pivotal's motion, the Court held that Plaintiff has Article III standing to pursue its claims, that Plaintiff's allegations stated a claim for relief, and that Pivotal's motion to strike allegations of the complaint was unwarranted. ECF No. 27.

The parties engaged in targeted discovery. Plaintiff served interrogatories and two sets of requests for production on Pivotal, and responded to Pivotal's requests for production. The parties met and conferred about Pivotal's discovery responses and document production, and were ultimately able to resolve their issues without court intervention.

On May 15, 2017, Pivotal filed a stipulated motion for leave to file a third-party complaint. ECF No. 42. The Court granted the motion, ECF No. 43, and Pivotal filed a third-party complaint against Gordon Rose and EPLJ on May 16. ECF No. 44. Pivotal subsequently dismissed its claims against Mr. Rose and EPLJ without prejudice. ECF No. 53.

Plaintiff served subpoenas on EPLJ and Gordon Rose, and reviewed the documents and data received in response. Plaintiff deposed Mr. Rose in Atlanta, Georgia on May 23, 2017. Murray Decl. ¶ 13. Plaintiff then obtained an affidavit from Mr. Rose describing the telemarketing EPLJ performed for Pivotal. *Id.* Pivotal deposed Plaintiff's principals on July 26, 2017. *Id.* ¶ 14.

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 3
CASE NO. 3:16-CV-05486-JCS

1    First and third-party discovery resulted in over 17,000 pages of documents, which Class

2    Counsel reviewed and analyzed. Murray Decl. ¶ 11.

3    Plaintiff retained expert Jeffrey Hansen to provide an opinion about whether Pivotal used

4    an autodialer to place calls to Plaintiff and the proposed class members and to analyze the calling

5    data produced by EPLJ. According to Mr. Hansen, EPLJ made 11,593,672 autodialed calls to

6    1,902,283 unique cellular telephone numbers. Murray Decl. ¶ 15.

7    When Pivotal decided to file a motion for summary judgment as to its vicarious liability

8    for the calls made by EPLJ, the parties briefed the issue of whether Plaintiff should be able to file

9    its motion for class certification first. ECF No. 55. The Court ruled that Pivotal could file its

10    summary judgment motion, ECF No. 58, and the parties stipulated to a briefing schedule for

11    summary judgment to be followed, if necessary, by a class certification hearing. ECF No. 60.

12    While continuing their discovery efforts, the parties engaged in a good-faith, arms-length,

13    full-day mediation with Bruce Friedman, Esq. of JAMS on August 31, 2017. Although the

14    parties did not resolve the dispute on that day, they continued their discussions for the next

15    several weeks with the assistance of the mediator and were ultimately able to reach an agreement

16    to settle Plaintiff's claims. The parties then prepared a formal settlement agreement. Murray

17    Decl. ¶ 17.

18    The parties notified the Court of the settlement on September 28, 2017. ECF No. 62.

19    **C.    Terms of the settlement.**

20    The terms of the settlement are memorialized in the parties' Class Action Settlement

21    Agreement and Release of Claims, referred to as the "SA." Murray Decl., Ex. 1.

22    1.    The proposed settlement class.

23    The settlement class is defined as:

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 4
CASE NO. 3:16-CV-05486-JCS

All individuals, entities and persons, to whom: (a) Pivotal and/or any third party acting on or allegedly acting on Pivotal's behalf, including EPLJ Enterprises, LLC ("EPLJ") or Gordon Rose, made one or more non-emergency telephone calls; (b) promoting credit card processing services, other services, or goods of any kind; (c) to their cellular telephone number; (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period from September 26, 2012 up through and including the date of preliminary approval of the parties' Settlement by the United States District Court for the Northern District of California.

SA § 1.4. The proposed settlement class is nearly identical to the class proposed in Plaintiff's complaint. *See* ECF No. 1 ¶ 83. The settlement class definition includes a few non-substantive differences in phrasing, adds the names of an entity (EPLJ) that Plaintiff alleges made the calls on Pivotal's behalf as well as the entity's operator (Gordon Rose), and revises the class period to end on the date the Court grants preliminary approval rather than trial. In all other respects, the definition of the proposed settlement class is identical to the class proposed in Plaintiff's complaint.

2.     The settlement fund.

The proposed settlement requires Pivotal to pay $9,000,000 to distribute to participating class members and to pay the attorneys' fee award, service award, and settlement administration costs. SA § 1.18. After payment of the attorneys' fee award, service award, and settlement administration costs approved by the Court, the settlement fund will be distributed equally to all class members who submit timely and valid claim forms. SA §§ 11.1-11.2. Class members will have 90 days from mailing of notice to submit a claim form. SA § 6.3. Any class members who deposit or cash their *pro rata* share could receive another *pro rata* share of the common fund from class members who did not cash or deposit the first settlement check (unless the cost of doing so is administratively infeasible). SA § 11.3.

The settlement fund is non-reversionary. If the Court does not approve the full amount of the attorneys' fee award, service award, or settlement administration costs, the difference will be distributed to participating class members who submit a timely and valid claim form. SA §§ 3.1, 11.3. If funds remain due to uncashed checks, they will be disbursed to Consumer Federation of America, a charity dedicated to furthering the interests of consumers including preventing telemarketing abuse. Murray Decl. ¶ 23.

3.    Release.

In exchange for the benefits provided by the settlement, class members will release any legal claims that may arise from or relate to the facts alleged in the complaint. SA §§ 1.28, 9.1-9.2. Plaintiff will also provide a general release of any claim that it could have asserted in this lawsuit. SA § 9.3.

4.    The settlement administrator and settlement administration costs.

The parties retained Epiq as the Settlement Administrator, subject to Court approval. Epiq will be responsible for obtaining class members' addresses, mailing notice to class members, following up on undelivered notices, establishing and maintaining a settlement website and a toll-free number and responding to class member inquiries, receiving any objections and requests for exclusion, preparing and delivering the CAFA notice to the appropriate federal and state officials, administering the settlement fund, disbursing the attorneys' fee award and service award, reviewing claim forms, and distributing the settlement fund to class members who file timely and valid claim forms. SA §§ 5.2, 5.5. Epiq estimates that the providing notice and administering the settlement will cost $1,231,675. These costs include performing "reverse lookups" for class member names and contact information, mailing notice, tracking undeliverable notices, updating addresses, processing claims, and disbursing funds. *Id.*

1          5.      Attorneys' fees and costs.

2          Class Counsel will submit an application to the Court for an award of attorneys' fees and

3   reimbursement of litigation expenses from the settlement fund. Class Counsel will not seek more

4   than 25% of the settlement fund ($2,250,000) for attorneys' fees. They will also seek

5   approximately $52,914 in cost reimbursements, and will support their application with detailed

6   information about their lodestar and an accounting of their expenses. Murray Decl. ¶¶ 19–20.

7   Pivotal retains the right to object to the amount of the requested fee award. SA § 4.2.

8          6.      Service award.

9          Plaintiff will apply for a service award in the amount of $25,000, to be paid from the

10  settlement fund, in recognition of its service to the class and in consideration for a general

11  release of Plaintiff's individual claim. SA § 9.3. Service awards that are "intended to compensate

12  class representatives for work undertaken on behalf of a class 'are fairly typical in class action

13  cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (quoting

14  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)). The awards

15  recognize the effort class representatives expend and the financial or reputational risk they

16  undertake in bringing the case, and to recognize their willingness to act as private attorneys

17  general. *Rodriguez*, 563 F.3d at 958-59.

18         Plaintiff devoted time to this case that would otherwise have been spent on business

19  activities, and assisted with developing the factual allegations, responded to discovery, and

20  appeared for deposition. Furthermore, the Plaintiff's principal's wife was also deposed. *See*

21  *generally* Heidarpour Decl. Plaintiff's willingness to step forward and lead this litigation on

22  behalf of the class, and the efforts Plaintiff put forward to ensure this successful resolution,

23  justify the requested service award. *See, e.g., Wellens v. Sankyo*, No. C 13-00581 WHO (DMR),

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 7
CASE NO. 3:16-CV-05486-JCS

1    2016 WL 8115715, at *4 (N.D. Cal. Feb. 11, 2016) (awarding class representatives service

2    awards of $25,000); *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06-3903 TEH, 2008 WL

3    7863877, at *1 (N.D. Cal. Oct. 22, 2008) (approving a $25,000 service award).

### III.  AUTHORITY AND ARGUMENT

5        In the Ninth Circuit, "there is an overriding public interest in settling and quieting

6    litigation …particularly … in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943,

7    950 (9th Cir. 1976). Courts recognize that as a matter of sound policy, settlements of disputed

8    claims are encouraged and a settlement approval hearing should not "reach any ultimate

9    conclusions on the contested issues of fact and law which underlie the merits of the dispute."

10   *Rodriguez*, 563 F.3d at 964 (citation omitted).

11       Proposed class action settlements are not effective unless approved by the Court. Fed. R.

12   Civ. P. 23(e). The main purpose of the Court's supervision of class action settlements is to

13   ensure "the agreement is not the product of fraud or overreaching by, or collusion between, the

14   negotiating parties." *Officers for Justice v. Civil Service Commission of City & County of San*

15   *Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Courts use a "two-step process" for the approval

16   of class action settlements, in which courts "first 'determine[] whether a proposed class action

17   settlement deserves preliminary approval and then, after notice is given to class members,

18   whether final approval is warranted." *In re Volkswagen "Clean Diesel" Marketing, Sales*

19   *Practices, and Products Liability Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 2212783, at *9

20   (N.D. Cal. May 17, 2017) (citation omitted).

21       In the past, courts have focused only on whether the proposed agreement appears to be

22   non-collusive, is free of "obvious deficiencies," and generally falls within the range of "possible"

23   approval. *See, e.g., In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal.

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 8
CASE NO. 3:16-CV-05486-JCS

2007). More recently, several courts in this district have required a more fulsome consideration of the merits of a settlement at the preliminary approval stage. *See Betorina v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *6 (N.D. Cal. Apr. 6, 2017); *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036 (N.D. Cal. 2016). These courts apply the factors set forth by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), and *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575-76 (9th Cir. 2004), which are used by courts to determine whether a settlement is fair, adequate, and reasonable at the final approval stage.

Plaintiff agrees that a more exacting review is appropriate at preliminary approval and will address each of the factors outlined by the Ninth Circuit: (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) whether the settlement is a product of collusion among the parties. Plaintiff submits that the factors weigh in favor of preliminary approval of the proposed settlement.

When a case settles before class certification, the Court must also determine whether the class satisfies the Rule 23 requirements for class certification. Because a settled case will not be tried, manageability considerations are not relevant. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

1      **A.      The proposed settlement class should be preliminarily certified.**

2             Plaintiffs requesting class certification must demonstrate "that they have met each of the

3      four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements

4      of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011). The

5      proposed class satisfies all of the Rule 23 requirements.[1]

6             1.      The class satisfies the requirements of Rule 23(a).

7             The Rule 23(a) requirements are numerosity, commonality, typicality and adequacy. Fed.

8      R. Civ. P. 23(a). The proposed class includes approximately 1.9 million people, which satisfies

9      the numerosity requirement. *See Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal.

10     2007) (numerosity is generally satisfied when the class comprises 40 members or more). The

11     proposed class also satisfies the commonality requirement of Rule 23(a), which requires that

12     class members' claims "depend upon a common contention," of such a nature that

13     "determination of its truth or falsity will resolve an issue that is central to the validity of each

14     [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The central

15     questions in this case are whether Pivotal is vicariously liable for calls made by EPLJ and

16     whether the calls violated the TCPA. The answers to these questions turn on common evidence

17     and can be fairly resolved for all class members at once. *See, e.g., Kristensen v. Credit Payment*

18     *Servs.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) (finding that questions of vicarious liability

19     satisfied commonality because the issue "turns on the federal common law of agency and can

20     arise from actual authority, apparent authority, or ratification" a determination of which will

21     depend either on the defendants' conduct rather than class members); *Whitaker v. Bennett Law,*

22     *PLLC,* No. 13-3145, 2014 WL 5454398, at *5 (S.D. Cal. Oct. 27, 2014) (finding that

23     ---
       [1] For settlement purposes only, Pivotal does not dispute this characterization. In the event the proposed settlement were to be rejected for any reason, Pivotal reserves all of its rights to contest class certification.

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 10
CASE NO. 3:16-CV-05486-JCS

1  commonality was satisfied where the central issue was whether the defendant used an ATDS or

2  prerecorded or artificial voice to make unsolicited calls).

3      Typicality is satisfied if "the claims or defenses of the representative parties are typical of

4  the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the

5  claims of other class members because they arise from the same course of alleged conduct by

6  Pivotal and are based on the same legal theories. Typicality is readily satisfied in TCPA cases

7  like this one, where the claims are based on the defendant's alleged common, coordinated

8  telemarketing campaigns. *See, e.g.*, *Whitaker*, 2014 WL 5454398, at *5 (finding typicality

9  satisfied because each class member's claim "revolves exclusively around [the defendant's]

10  conduct as it specifically relates to the alleged violations of the TCPA"); *Agne v. Papa John's

11  Int'l, Inc.*, 286 F.R.D. 559, 569 (W.D. Wash. 2012) (finding typicality satisfied where the

12  plaintiff's claims, "like all class members' claims, arise from text marketing campaigns

13  commissioned by Papa John's franchisees and executed by the same marketing vendor ….").

14  That is especially true here, where each proposed class member was allegedly sent the same pre-

15  recorded message.

16      Finally, the adequacy requirement is satisfied when the class representatives will "fairly

17  and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To make this

18  determination, "courts must resolve two questions: '(1) do the named plaintiffs and their counsel

19  have any conflicts of interest with other class members and (2) will the named plaintiffs and their

20  counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985 (quoting

21  *Hanlon*, 150 F.3d at 1020). Plaintiff has no conflicts of interest with the other proposed class

22  members and has demonstrated its commitment to the class by actively participating in the

23  litigation. *See* Declaration of Fred Heidarpour. Plaintiff is represented by counsel who are

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 11
CASE NO. 3:16-CV-05486-JCS

1    experienced in litigating class action cases and TCPA claims in particular, and who were

2    previously appointed by the Court to represent class members' interests in other cases. ECF No.

3    38; Murray Decl. ¶¶ 3–8; Paronich Decl. ¶ 3; McCue Decl. ¶¶ 3–9; and Tindall Decl. ¶¶ 1–8.

4           2.      The class satisfies the requirements of Rule 23(b)(3).

5           Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact

6    common to the members of the class predominate over any question affecting only individual

7    members, and … a class action is superior to other available methods for the fair and efficient

8    adjudication of the controversy." Both requirements are satisfied in this case.

9           Common questions predominate over any questions affecting only individual members.

10   The overarching common question is whether Pivotal is vicariously liable for the calls placed by

11   EPLJ. This question can be resolved using the same evidence for all class members and is

12   exactly the kind of predominant common issue that makes certification appropriate. *See Tyson*

13   *Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central

14   issues in the action are common to the class and can be said to predominate, the action may be

15   considered proper under Rule 23(b)(3) ….'" (citation omitted)). The other elements of Plaintiff's

16   claims will also be proven with common evidence, including whether EPLJ used an automatic

17   telephone dialing system or a pre-recorded message to place calls to cell phones, and whether

18   Pivotal or EPLJ acted willfully. Because of the numerous common issues that typically

19   predominate over individual issues, courts routinely certify TCPA claims. *See, e.g., Ikuseghan v.*

20   *Multicare Health System*, No. C14-5539 BHS, 2015 WL 4600818, at *8 (W.D. Wash. July 29,

21   2015); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 400 (M.D.N.C. 2015); *Booth v.*

22   *Appstack, Inc.*, No. C13-1533 JLR, 2015 WL 1466247, at *13 (W.D. Wash. Mar. 30, 2015); *Bee,*

23   *Denning, Inc. v. Capital Alliance Group*, 310 F.R.D. 614, 630 (S.D. Cal. 2015).

1    Class certification is also "superior to other available methods for fair and efficient

2    adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Classwide resolution is the only

3    practical method of addressing the alleged telemarketing violations at issue in this case. There

4    are millions of class members with modest individual claims, most of whom likely lack the

5    resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of*

6    *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001)

7    (cases involving "multiple claims for relatively small individual sums" are particularly well

8    suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168,

9    1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of

10   litigating on an individual basis, this factor weighs in favor of class certification."); *Agne*, 286

11   F.R.D. at 571 ("Five hundred dollars is not sufficient to compensate the average consumer for

12   the time and effort that would be involved in bringing a small claims action …."); *Bee, Denning,*

13   *Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) ("In the context of the

14   TCPA, the class action device likely is the optimal means of forcing corporations to internalize

15   the social costs of their actions").

16   **B.    The proposed settlement should be preliminarily approved.**

17   Each of the factors outlined by the Ninth Circuit in *Hanlon* and *Churchill Village*—with

18   the exception of the reaction of class members, since they have yet to be notified—support

19   preliminary approval of the settlement.

20       1.    The strength of Plaintiff's case.

21   Plaintiff believes it has a strong case for liability. Prior to deposing Gordon Rose of

22   EPLJ, Plaintiff obtained an affidavit from Mr. Rose stating that Pivotal approved a business plan

23   where EPLJ would use pre-recorded messages asking individuals if they were interested in

1   Pivotal's payment processing and merchant account services products, and that the pre-recorded

2   telemarketing campaign made calls using an automatic telephone dialing system. Murray Decl.

3   ¶ 13. Mr. Rose stated that EPLJ made "cold calls" targeted at businesses and that EPLJ therefore

4   did not have any evidence that any of the recipients of the calls consented to receiving the pre-

5   recorded message.[2] *Id.*

6        Plaintiff also obtained documents and written discovery from Pivotal relating to its

7   alleged business practices and its relationship and interaction with EPLJ. Murray Decl. ¶ 11.

8   Plaintiff believes these documents, and depositions that Plaintiff was planning to take when the

9   parties negotiated the settlement, would have further supported their claims. But success was

10  certainly not guaranteed. Pivotal denies liability for Plaintiff's claims. SA, Recitals § G. Pivotal

11  has asserted several defenses, *see* ECF No. 36, and continues to deny that it can be held

12  vicariously liable for EPLJ's alleged telemarketing. SA, Recitals § F. Proving vicarious liability

13  is often challenging in TCPA cases, and courts have dismissed claims on summary judgment in

14  other TCPA cases. *See Makaron v. GE Security Mfg. Co.*, No. CV-14-1274-GW (AGRx), 2015

15  WL 3526253, at *10 (C.D. Cal. May 18, 2015); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d

16  1079, 1086 (C.D. Cal. 2012).

17        2.    The risk, expense, complexity, and likely duration of further litigation.

18        Plaintiff has many procedural hurdles to clear before a potential successful resolution

19  through further litigation. First, Plaintiff must continue its discovery efforts, both written

20  discovery and depositions. Plaintiff must move for class certification, a necessary and always

21  challenging step in the litigation. As discussed above, defendants in TCPA cases often move for

22  [2] Pivotal, not surprisingly, disputes the statements in this paragraph. In the event the proposed settlement were to be rejected for any reason, Pivotal reserves all of its rights to challenge Mr. Rose's affidavit on any and all grounds.

23  Pivotal further reserves the right to contest any other allegation, characterization or legal argument made by Plaintiff herein.

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 14
Case No. 3:16-cv-05486-JCS

summary judgment, and sometimes prevail, particularly on issues of vicarious liability, which is one of Pivotal's primary defenses here. The parties would retain experts and likely file *Daubert* challenges. Plaintiff would then not only have to prevail at trial, but retain any favorable judgment through the appellate process. It is because almost all class actions involve a high level of risk, expense, and complexity that judicial policy so strongly favors resolving class actions through settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998).

Litigating this case to trial and through any appeals would be expensive and time-consuming and would present risk to both parties. The settlement, by contrast, provides prompt and certain relief for class members. *See Rodriguez*, 563 F.3d at 966; *Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." (citation omitted)).

3. The risk of maintaining class action status through trial.

Plaintiff has not yet moved for class certification. There is a risk that Plaintiff would not prevail or, if it did, that Pivotal might later succeed in moving to decertify. *See Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014) ("[B]oth parties recognize that eBay will actively oppose certification of the class if the settlement is not approved. As such, the Court finds that the potential difficulties associated with obtaining class certification weigh in favor of approving the settlement.").

4. The amount offered in settlement.

Pivotal has agreed to pay $9 million to settle Plaintiff's claims. This amount includes the costs of all notice and settlement administration, attorneys' fees and costs, and a service award to

1    Plaintiff. Once those amounts are paid, the settlement fund will be distributed equally to all class

2    members who complete a simple claim form, which they may do online. *See* SA, Ex. 1 (claim

3    form). Each participating class member will receive a cash payment. The amount of the

4    payments will depend on the number of claims submitted. For example, if 10% of the 1,902,283

5    class members file claims, each participating class member will receive approximately $29.

6    ($9,000,000 - $1,231,675 (notice and administration expenses) - $2,250,000 (requested fee) -

7    $52,914 (requested litigation costs) - $25,000 (requested service award)/190,228 claimants =

8    $28.60). Based on their experience with claims rates in TCPA and other class settlements, Class

9    Counsel and the proposed Settlement Administrator estimate that each participating class

10   member will receive between $20 and $60. Murray Decl. ¶ 22. The final amount could be higher

11   or lower depending on the number of claims.

12        While the cash payments may at first blush seem low, when all factors are considered,

13   they compare favorably to the potential damages of $1,500 per class member, which puts

14   Pivotal's total exposure at over $17 billion. The proposed settlement is reasonable and of fair

15   value given the significant litigation risks Plaintiff faces in continuing to litigate. The amounts

16   are also reasonable given the high litigation costs and fees that would likely engulf any amounts

17   class members could recoup if they proceeded on an individual basis. Class members would

18   further have to take on the challenge of obtaining discovery from Pivotal, hiring an expert to

19   opine about whether the calling equipment constitutes an "ATDS" under the TCPA, and proving

20   their entitlement to damages. These costs would quickly exceed any individual class member's

21   potential recovery. Furthermore, Pivotal insisted throughout the settlement negotiations that it

22   lacked funds to pay a large judgment. Murray Decl. ¶ 27. Indeed, Pivotal conditioned settlement

23

1   on obtaining funding. *Id.* Pivotal provided Class Counsel with financial documents, which Class

2   Counsel scrutinized to assess Pivotal's assertions. *Id.*

3   　　　　The settlement provides class members with cash payments now and eliminates the risk

4   of later payments at a reduced rate due to higher costs and losses in the course of litigation—and

5   the risk of no payment at all. "The proposed settlement need not be ideal, but it must be fair and

6   free of collusion, consistent with a plaintiff's fiduciary obligations to the class." *Dyer v. Wells*

7   *Fargo Bank, N.A.*, No. 13-cv-02858-JST, 2014 WL 1900682, at *6 (N.D. Cal. May 12, 2014);

8   *see also Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we

9   address is not whether the final product could be prettier, smarter or snazzier, but whether it is

10  fair, adequate and free from collusion."). The settlement is also in line with other TCPA

11  settlements approved across the country and here in California. *Manouchehri v. Styles for Less,*

12  *Inc.*, No. 14-cv-2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily

13  approving settlement where class members could choose to receive either a $10 cash award or a

14  $15 voucher); *Connor v. JPMorgan Chase Bank, N.A.*, No. 10 CV 01284 GPC BGS, Dkt. No.

15  160 (S.D. Cal. Feb. 5, 2015) (granting final approval to a settlement paying $11,268,058 on

16  slightly less than 2.5 million accounts); *Adams v. AllianceOne Receivables Mgmt.,* No. 08-cv-

17  248 (S.D. Cal. Sept. 28, 2012) ($9 million for 6,079,411 class members, *see* DE 109 at 10, 116 at

18  6, and 137).

19  　　　　5.　　The extent of discovery completed and the stage of proceedings.

20  　　　　For this factor, courts look to whether the parties have sufficient information to make an

21  informed decision with respect to the settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

22  454, 459 (9th Cir. 2000). The parties briefed Pivotal's motion to dismiss, which the Court

23  resolved in Plaintiff's favor. They have also engaged in sufficient discovery to have a good

1  understanding of the legal and factual issues in the case. Through written and document

2  discovery of Pivotal and critical third-party discovery of EPLJ, Plaintiff developed an

3  appreciation of the strengths and weaknesses of its claims. It is with this foundation that the

4  parties were able to negotiate this settlement.

5          6.      The experience and views of counsel.

6          Class Counsel have extensive experience litigating and settling class actions, and TCPA

7  class actions in particular. Murray Decl. ¶ 3–8; Paronich Decl. ¶ 3; McCue Decl. ¶¶ 3–9; and

8  Tindall Decl. ¶¶ 1–8. The recommendation of experienced counsel weighs in favor of granting

9  final approval and creates a presumption of reasonableness. *See Bellinghausen v. Tractor Supply*

10 *Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) ("The trial court is entitled to, and should, rely upon

11 the judgment of experienced counsel for the parties." (citation omitted)); *Knight v. Red Door*

12 *Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009) (citing

13 counsel's experience and recommendation as weighing in favor of approval). The fact that

14 qualified and well-informed counsel endorse the settlement as being fair, reasonable, and

15 adequate weighs heavily in favor of approval. *See, e.g.*, Murray Decl. ¶ 8.

16         7.      The presence of a governmental participant.

17         While no governmental entity is a party to this litigation, notice will be issued to the

18 Attorney General of the United States and Attorneys General of each of the States in accordance

19 with the Class Action Fairness Act, 28 U.S.C. § 1715, and given an opportunity to raise any

20 objections or concerns they may have.

21

22

23

8.     <u>The reaction of class members to the proposed settlement.</u>

The class members have not yet had an opportunity to react to the proposed settlement because they have not been notified of it. Plaintiff will provide the Court with information about class members' reaction in its motion for final approval of the settlement.

9.     <u>Lack of collusion among the parties.</u>

This case has been hard fought since the beginning. The parties were at all times adversarial, including during settlement discussions. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (citation omitted); *see also Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). The parties did not commence settlement discussions until after Plaintiff successfully opposed Pivotal's motion to dismiss, served its expert witness report, and had completed sufficient discovery to have a solid understanding of the strengths and weaknesses of its claims. The settlement was negotiated with the assistance of Bruce Friedman, Esq. of JAMS, during an in-person mediation session and continued negotiations over the subsequent weeks. Courts recognize that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Betorina*, 2017 WL 1278758, at *7 (citation omitted).

The Ninth Circuit has identified "red flags" that it says may suggest that plaintiffs' counsel allowed pursuit of their own self-interest to infect settlement negotiations: (1) when counsel receive a disproportionate portion of the settlement; (2) when the parties agree to a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds; and (3) when the parties agree that any fees not awarded will revert to defendants

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 19
CASE NO. 3:16-CV-05486-JCS

1    rather than be added to the class fund." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d

2    935, 947 (9th Cir. 2011). None of these warning signs are present in this case. Class Counsel will

3    be paid from the same non-reversionary settlement fund as class members, and were therefore

4    incentivized to negotiate the largest fund possible. Class Counsel will not request a fee greater

5    than 25% of the settlement fund, which is in line with the Ninth Circuit's benchmark. *See*

6    *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). The Court will, of course have ultimate

7    discretion over how much of the settlement fund will go toward fees after reviewing counsel's

8    application. Pivotal has the right to object to the amount that Class Counsel requests. SA § 4.2.

9    And no amount of the $9 million settlement fund will revert to Pivotal; any fees not awarded will

10   be distributed to class members who have submitted timely and valid claim forms. SA § 3.1.

11   **C.    The proposed notice plan should be approved.**

12       The federal rules provide that "[t]he court must direct notice in a reasonable manner to all

13   class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). When the

14   settlement class is certified under Rule 23(b)(3), the notice must also be the "best notice

15   practicable under the circumstances, including individual notice to all members who can be

16   identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

17       The parties have agreed on a notice plan that will provide class members with direct mail

18   notice of a postcard that describes the settlement and class members' rights in plain English and

19   provides them with the settlement website and a toll-free number to obtain more information. As

20   discussed below, the notice plan satisfies the requirements of Rule 23 and due process.

21

22

23

1.      <u>The settlement provides for the best method of notice practicable under the circumstances.</u>

The parties propose to mail a postcard notice by first-class mail to all 1.9 million class members. SA § 6. EPLJ has produced associated names and addresses for approximately 526,000 of the telephone numbers that appear on the calling records, and the Settlement Administrator will perform reverse look-ups on the remaining numbers. SA § 6.2.1. If a postcard notice is returned with a forwarding address, the Settlement Administrator will forward the notice to the updated address via first-class mail. SA § 6.2.2. If a postcard notice is returned as undeliverable without a forwarding address, the Settlement Administrator will perform a reasonable "skiptrace" search using the National Change of Address database to obtain an updated address and forward the notice to the updated address via first-class mail. *Id.*

The Settlement Administrator will establish and maintain a settlement website with detailed information about the settlement. SA § 1.35. The website address will be included in the postcard notice. SA § 6.2.3. The Settlement Administrator will also establish a toll-free number that class members can call to receive more detailed information about the settlement SA § 5.2. Plaintiff believes this is the most effective way to alert class members to the existence of the settlement and convey detailed information about the settlement. *See Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM (JCx), 2012 WL 10274679, at *8 (C.D. Cal. Nov. 13, 2012) (approving a similar postcard notice plan).

2.      <u>The proposed form of notice adequately informs class members of the settlement and their rights.</u>

The proposed postcard notice, attached as Exhibit 2 to the Settlement Agreement, together with the website notice, attached as Exhibit 3 to the Settlement Agreement, is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 21
CASE NO. 3:16-CV-05486-JCS

the action and afford them an opportunity to present their objections" and also describes "the

action and the plaintiffs' rights in it." *Hawthorne v. Umpqua Bank*, No. 11-cv-6700-JST, 2014

WL 4602572, at *6 (N.D. Cal. Sept. 15, 2014) (quoting *Philips Petroleum Co. v. Shutts*, 472

U.S. 797, 812 (1985)). The notice is written in plain English, and will include the dates for class

members to object to the settlement and the final approval hearing. *See Chavez v. PHC Corp.*,

No. 13-cv-01797-LHK, 2015 WL 581382, at *6 (N.D. Cal. Feb. 11, 2015) ("Notice is

satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those

with adverse viewpoints to investigate and to come forward and be heard.'" (citation omitted)).

**D.     The schedule for final approval.**

The next steps in the settlement approval process are to schedule a final approval hearing,

notify class members of the settlement and hearing, and provide class members with the

opportunity to submit simple claim forms and any comments about the settlement. The parties

propose the following schedule for final approval of the settlement:

| Event | Date |
| --- | --- |
| Notice deadline | 30 days after preliminary approval |
| Class Counsel to file motion for attorneys' fees | 60 days after notice is sent |
| Deadline for class members to file claims, object, and request exclusion | 90 days after notice is sent |
| Class Counsel to file motion for final approval | 110 days after notice is sent |
| Final approval hearing | At least 175 days after preliminary approval order |

**IV.   CONCLUSION**

Plaintiff requests that the Court enter an order that (1) certifies the proposed settlement

class for settlement purposes only; (2) grants preliminary approval of the proposed settlement;

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 22
CASE NO. 3:16-CV-05486-JCS

1    (3) directs notice to be disseminated to class members in the form and manner proposed by the

2    parties; (4) appoints Epiq to serve as the Settlement Administrator; and (5) sets a schedule and

3    hearing date for final approval of the settlement and related deadlines.

4           RESPECTFULLY SUBMITTED AND DATED this 1st day of November, 2017.

5                                       TERRELL MARSHALL LAW GROUP PLLC

6                                       By:   /s/ Jennifer Rust Murray, *Admitted Pro Hac Vice*
                                             Beth E. Terrell, CSB #178181
7                                            Email:  bterrell@terrellmarshall.com
                                             Jennifer Rust Murray, *Admitted Pro Hac Vice*
8                                            Email:  jmurray@terrellmarshall.com
                                             Adrienne D. McEntee, *Admitted Pro Hac Vice*
9                                            Email:  amcentee@terrellmarshall.com
                                             936 North 34th Street, Suite 300
10                                           Seattle, Washington 98103-8869
                                             Telephone: (206) 816-6603
11                                           Facsimile: (206) 319-5450

12                                           Edward A. Broderick
                                             Email:  ted@broderick-law.com
13                                           Anthony I. Paronich, *Admitted Pro Hac Vice*
                                             Email:  anthony@broderick-law.com
14                                           BRODERICK & PARONICH, P.C.
                                             99 High Street, Suite 304
15                                           Boston, Massachusetts 02110
                                             Telephone: (617) 738-7080
16                                           Facsimile: (617) 830-0327

17                                      *Interim Class Counsel*

18                                           Steven M. Tindall, SBN #187862
                                             Email: smt@classlawgroup.com
19                                           GIBBS LAW GROUP LLP
                                             505 14th Street, Suite 1110
20                                           Oakland, California 94612
                                             Telephone: (510) 350-9700
21                                           Facsimile: (510) 350-9701

22

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Matthew P. McCue
Email:  mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. McCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

*Attorneys for Plaintiff*

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 24
Case No. 3:16-cv-05486-JCS

1

<u>CERTIFICATE OF SERVICE</u>

2

I, Jennifer Rust Murray, hereby certify that on November 1, 2017, I electronically filed

3

the foregoing with the Clerk of the Court using the CM/ECF system which will send notification

4

of such filing to the following:

5

        Antony Buchignani, SBN #186528
        Email:  tbuchignani@tocounsel.com

6

        Drew Hansen, SBN #218382
        Email:  dhansen@tocounsel.com

7

        Amy Burke, SBN #276699
        Email:  aburke@tocounsel.com

8

        THEODORA ORINGHER PC
        1840 Century Park East, Suite 500

9

        Los Angeles, California 90067-2120
        Telephone: (310) 557-2009

10

        Facsimile: (310) 551-0283

11

        *Attorneys for Defendant*

12

DATED this 1st day of November, 2017.

13

              TERRELL MARSHALL LAW GROUP PLLC

14

15

        By:  /s/ Jennifer Rust Murray, *Admitted Pro Hac Vice*
            Jennifer Rust Murray, *Admitted Pro Hac Vice*
            Email: jmurray@terrellmarshall.com

16

            936 North 34th Street, Suite 300
            Seattle, Washington 98103

17

            Telephone: (206) 816-6603
            Facsimile: (206) 319-5450

18

            *Attorneys for Plaintiff*

19

20

21

22

23

PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 25
CASE NO. 3:16-CV-05486-JCS