1  Steven M. Tindall, SBN #187862
   Email: smt@classlawgroup.com
2  GIBBS LAW GROUP LLP
   505 14th Street, Suite 1110
3  Oakland, California 94612
   Telephone: (510) 350-9700
4  Facsimile: (510) 350-9701

5  Beth E. Terrell, SBN #178181
   Email:  bterrell@terrellmarshall.com
6  Jennifer Rust Murray, *Admitted Pro Hac Vice*
   Email:  jmurray@terrellmarshall.com
7  936 North 34th Street, Suite 300
   Seattle, Washington 98103
8  Telephone: (206) 816-6603
   Facsimile: (206) 319-5450

9
   [Additional Counsel Appear on Signature Page]
10
   *Attorneys for Plaintiff and the Proposed Class*
11
                    UNITED STATES DISTRICT COURT
12                FOR THE NORTHERN DISTRICT OF CALIFORNIA

13  ABANTE ROOTER AND PLUMBING,           NO.  3:16-cv-05486-JCS
    INC., individually and on behalf of all others
14  similarly situated,                    **NOTICE OF MOTION AND**
                                           **MEMORANDUM OF POINTS AND**
15               Plaintiff,                **AUTHORITIES IN SUPPORT OF**
                                           **PLAINTIFF'S MOTION FOR**
16         v.                              **ATTORNEYS' FEES, COSTS, AND**
                                           **SERVICE AWARD**
17  PIVOTAL PAYMENTS INC., d/b/a/
    CAPITAL PROCESSING NETWORK and         JURY TRIAL DEMAND
18  CPN,
                                           Complaint Filed:  September 26, 2016
19               Defendant.
                                           DATE:        October 5, 2018
20                                         TIME:        2:00 p.m.
                                           LOCATION:  Courtroom G - 15th Floor
21

22

23

24

TO:    DEFENDANT PIVOTAL PAYMENTS INC., d/b/a/ CAPITAL PROCESSING NETWORK and CPN, THIRD PARTY DEFENDANT GORDON ROSE, and THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 5, 2018, at 10:00 a.m., in Courtroom G, 15th Floor, of the U.S. District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, 94012, Class Counsel and Plaintiff will respectfully move the Court for (1) an award of attorneys' fees and costs in the amount of $2,250,000, which is 25% of the $9,000,000 Settlement Fund; and (2) $2,000 as a service payment to Plaintiff.

This motion will be based on: this Notice of Motion, the following Memorandum of Points and Authorities, the Declarations of Beth E. Terrell, Anthony I. Paronich, Matthew P. McCue, Steven M. Tindall, and Bryan Kemnitzer, the records and file in this action; and on such other matters as may be presented before or at the hearing of the motion.

**TABLE OF CONTENTS**

Page No.

I.    INTRODUCTION ................................................................................................ 1

II.   ISSUE TO BE DECIDED ................................................................................. 1

III.  RELEVANT FACTS ........................................................................................ 1

      A.    Plaintiff and Class Counsel diligently pursued relief for the Class
            despite challenges ................................................................................... 1

      B.    The settlement ......................................................................................... 5

IV.   AUTHORITY AND ARGUMENT ................................................................. 5

      A.    The percentage-of-the-fund method is the appropriate method for
            determining a reasonable attorneys' fee in this case ............................... 5

      B.    A fee award at the Ninth Circuit benchmark of 25% of the Settlement
            Fund will fairly compensate Class Counsel for their work on behalf of
            the Settlement Class ............................................................................... 10

            1.    Class Counsel achieved an excellent settlement for the class ............... 11

            2.    Class Counsel assumed a significant risk of no recovery ..................... 12

            3.    Class Counsel's skill and quality of work delivered a recovery
                  for the class ................................................................................... 14

            4.    Awards in similar cases show that the requested fee is reasonable ........ 15

      C.    A lodestar crosscheck confirms that the requested fee is reasonable ................. 16

            1.    Class Counsel's rates are consistent with rates in the community
                  for similar work performed by attorneys of comparable skill,
                  experience, and reputation ................................................................ 17

            2.    Class Counsel expended a reasonable number of hours litigating
                  the case ......................................................................................... 18

            3.    A multiplier is reasonable and appropriate ......................................... 20

D.    Class Counsel's litigation costs were necessarily and reasonably incurred ....... 23

E.    Plaintiff requests a modest service award of $2,000............................................ 23

V.    CONCLUSION............................................................................................................ 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ........................................................................................ 5

*Booth v. Appstack, Inc.*,
No. 13-cv-1533-JLR, 2016 WL 3030256 (W.D. Wash. May 25, 2016) ...................... 13

*Corson v. Toyota Motor Sales U.S.A., Inc.*,
No. CV 12-8499-JGB, 2016 WL 1375838 (C.D. Cal. Apr. 4, 2016) ............................ 23

*Democratic Party of Wash. v. Reed*,
388 F.3d 1281 (9th Cir. 2004) ...................................................................... 19

*Destefano v. Zynga*,
No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .................. 7, 13, 15

*Di Giacamo v. Plains All Am. Pipeline*,
No. Civ. A. H-99-4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001) ...................... 22

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009) ............................................................... 6, 16

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......................................................................... 7

*Hillson v. Kelly Servs. Inc.*,
No. 2:15-cv-10803, 2017 WL 3446596 (E.D. Mich. Aug. 11, 2017) ........................... 21

*Hopkins v. Stryker Sales Corp.*,
No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ..................... 20, 23

*Ikuseghan v. Multicare Health Sys.*,
No. C 14-5539 BHS, 2016 WL 4363198 (W.D. Wash. Aug. 16, 2016) ....................... 15

*In re Activision Secs. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) ............................................................... 7, 8

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
No. 09 MDL 2007, 2014 WL 12591624 (C.D. Cal. Jan. 10, 2014) ............................ 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935, 942 (9th Cir. 2011) ........................................................... 6, 7, 10, 16, 17

*In re Capital One Tel. Consumer Protection Act Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ................................................................... 15

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
    109 F.3d 602 (9th Cir. 1997) ...................................................................... 6, 10

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................... 7, 11

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ........................................................... 12, 23, 25

*In re Rite Aid Corp. Secs. Litig.*,
    396 F.3d 294 (3d Cir. 2005) .............................................................................. 8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ..................................................................... 6, 13

*In re Yahoo Mail Litig.*,
    No. 13-CV-4980-LHK, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ....................... 24

*James v. JPMorgan Chase Bank, N.A.*,
    No. 8:15-cv-2424-T-23 JSS, 2017 WL 2472499 (M.D. Fla. June 5, 2017) ................. 16

*Jenson. v. First Tr. Corp.*,
    No. CV 05-3124 ABC, 2008 WL 11338161 (C.D. Cal. June 9, 2008) ........................ 12

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
    No. 16-CV-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018) ........................ 21

*Jones v. Royal Admin. Servs. Inc.*,
    866 F.3d 1100 (9th Cir. 2017) ............................................................................. 4

*Jones v. Royal Admin. Servs. Inc.*,
    887 F.3d 443 (9th Cir. 2018) ............................................................................. 14

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) .............................................................................. 22

*Knight v. Red Door Salons, Inc.*,
    No. 08-01520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ..................................... 15

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015)...................................................................16

*Krakauer v. Dish Network L.L.C.*,
    No. 1:14-cv-333, 2017 WL 2242952 (M.D.N.C. May 22, 2017)...................13

*Kristensen v. Credit Payment Servs.*,
    879 F.3d 1010 (9th Cir. Jan. 10, 2018) .........................................................14

*Lees v. Anthem Ins. Cos., Inc.*,
    No. 4:13-cv-1411 SNLJ, 2015 WL 3645208 (E.D. Mo. June 10, 2015)......................16

*Lofton v. Verizon Wireless (VAW) LLC*,
    No. C 13-05665 YGR, 2016 WL 7985253 (N.D. Cal. May 27, 2016)..........................15

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)...........................................................21

*Melito v. Am. Eagle Outfitters, Inc.*,
    No. 14-cv-2440 (VEC), 2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017)..................15, 16

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*,
    No. 1:16-cv-00157-DAD-JLT, 2017 WL 5665848 (E.D. Cal. Nov. 27, 2017).............21

*Miller v. Ghirardelli Chocolate Co.*,
    No. 12-CV-04936, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015) ...................24

*Moore v. Verizon Commc'ns Inc.*,
    No. C 09-1823 SBA, 2014 WL 588035 (N.D. Cal. Feb. 14, 2014)................18

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) .................................................................16, 17

*Naiman v. TranzVia LLC*,
    No. 17-cv-4813-PJH, 2017 WL 5992123 (N.D. Cal. Dec. 4, 2017)..............14

*Nwabueze v. AT&T, Inc.*,
    No. C 09-01529 SI, 2014 WL 324262 (N.D. Cal. Jan. 29, 2014)..................18

*Pan v. Qualcomm Inc.*,
    No. 16-CV-01885-JLS-DHB, 2017 WL 3252212 (S.D. Cal. July 31, 2017)...............21

*Pelletz v. Weyerhaeuser Co.*,
    592 F. Supp. 2d 1322 (W.D. Wash. 2009) ...................................................25

*Perkins v Linkedin Corp.*,
    No. 13-cv-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ........................... 12

*Rodriguez v. W. Publishing*,
    563 F.3d 948 (9th Cir. 2009) ................................................................. 23, 24

*Simon v. Toshiba Am.*,
    No. C 07-06202 MHP, 2010 WL 1757956, at *3 (N.D. Cal. Apr. 30, 2010)................. 7

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................. 6, 23, 24

*Steiner v. Am. Broad Co., Inc.*,
    248 F. App'x 780 (9th Cir. 2007) .............................................................. 21

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) .................................................................... 9

*Villalpando v. Exel Direct, Inc.*,
    No. 3:12-cv-04137-JCS, 2016 WL 7740854 (N.D. Cal. Dec. 12, 2016)................. 17, 18

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ............................................................. 22

*Vincent v. Hughes Air W.*,
    557 F.2d 759 (9th Cir. 1977) ................................................................... 23

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...................................... 6, 9, 10, 11, 16, 21, 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................ 9

*Wehlage v. Evergreen at Arvin, LLC*,
    No. 4:10-cv-05839-CW, 2012 WL 4755371 (N.D. Cal. Oct. 4, 2012) ........................ 18

*Widrig v. Apfel*,
    140 F.3d 1207 (9th Cir. 1998) ................................................................. 17

*Wren v. RGIS Inventory Specialists*,
    No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................. 17, 18, 24

*Wright v. Nationstar Mortg. LLC*,
    No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016)..................................... 16

1

**OTHER AUTHORITIES**

2

Alan Hirsch et al., Awarding Attorneys' Fees and Managing Fee Litigation,
    82-83 (Federal Judicial Center 3d ed. 2015).....................................................................8

3

John Leubsdorf, *The Contingency Factor in Attorney Fee Awards*,
    90 Yale L.J. 473 (1981) ...............................................................................................20

4

Manual for Complex Litigation (Fourth) § 14.121 (2004) ........................................................10

5

Richard A. Posner, Economic Analysis of Law 783 (8th ed. 2011)..........................................20

6

Task Force on Contingent Fees, Tort Trial and Insurance Practice Section of the
    American Bar Association, *Report on Contingent Fees in Class Action Litigation*,
    25 Rev. Litig. 459 (2006).............................................................................................8, 9

Theodore Eisenberg et al., *Attorneys' Fees in Class Actions: 2009-2013*,
    92 N.Y.U. L. Rev. 937, 945, 947 (Dec. 2016)................................................................9

William B. Rubenstein, 5 Newberg on Class Actions § 15:67 (5th ed. Dec. 2017).....................9

William B. Rubenstein, 5 Newberg on Class Actions § 15:91 (5th ed. Dec. 2017)............20, 21

William B. Rubenstein, *Why the Percentage Method?*,
    2 Class Action Attorney Fee Digest 93 (March 2008) ...................................................8

# I.  INTRODUCTION

Plaintiff and Class Counsel aggressively but efficiently litigated this TCPA class action, engaged in mediation and extensive negotiations with Defendant Pivotal Payments Inc., and ultimately achieved a favorable settlement on behalf of the Class. The settlement provides cash awards for Class members, despite significant hurdles to recovery had this litigation proceeded. To compensate them for their efforts, Class Counsel request a fee at the Ninth Circuit's benchmark rate of 25% of the common fund, which amounts to $2,250,000 including all litigation costs. Class Counsel's request accounts for the excellent result they obtained for the Class given the significant risks they faced in prosecuting this action and their high-quality work. A lodestar crosscheck confirms the reasonableness of their request.

Class Counsel also respectfully request that the Court approve a service award to Plaintiff in the amount of $2,000 for its work on behalf of the Class. Plaintiff has actively participated in this action since its inception. Plaintiff's principals, Fred and Farideh Heidarpour, responded to written discovery requests, assisted in counsel's investigation, each sat for depositions, and were ready and willing to testify at trial. A $2,000 service award for their efforts is reasonable and appropriate.

# II.  ISSUE TO BE DECIDED

Whether the requested attorneys' fees, costs, and service award are reasonable and should be awarded.

# III.  RELEVANT FACTS

**A.**  **Plaintiff and Class Counsel diligently pursued relief for the Class despite challenges.**

Plaintiff filed this lawsuit on September 26, 2016, alleging that Pivotal violated the Telephone Consumer Protection Act, 47 U.S.C. § 227(b), by placing robocalls to millions of small businesses' cell phones, including Plaintiff's cell phone, marketing Pivotal's payment

1   processing equipment and services. Dkt. No. 1. Class Counsel's work on the case began well

2   before the action commenced. The prerecorded message that Plaintiff received on its cell phone

3   did not identify the company that was calling and the phone number from which the call was

4   placed was a non-working number. Paronich Decl. ¶ 3. With the assistance of Plaintiff, Class

5   Counsel investigated the call and ultimately identified Pivotal as the company offering its

6   services through the prerecorded messages. *Id*. Class Counsel then investigated whether Plaintiff

7   had a valid claim against Pivotal, researching Pivotal's business model and its financial

8   wherewithal to satisfy a judgment. *Id.* ¶ 4. Limited information was available on the latter issue

9   because Pivotal is privately held. *Id.*

10       Class Counsel's investigation revealed a number of potential litigation challenges.

11   Pivotal's headquarters are in Canada and it appeared from Plaintiff's investigation that third

12   parties were involved in placing the initial prerecorded calls. McCue Decl. ¶ 3. From experience,

13   Class Counsel knew this scenario raised the challenging issue of whether Pivotal could be held

14   vicariously liable for its vendor's calls. *Id.*

15       From the outset, the case was actively litigated. Pivotal moved to dismiss, asserting

16   among other things that Plaintiff lacked Article III standing because it had not suffered a

17   concrete injury caused by Defendant and Plaintiff failed to allege sufficient facts showing that

18   Pivotal "made" calls that violated the TCPA. Dkt. No. 15. The Court denied Pivotal's motion in

19   its entirety, holding that Plaintiff has Article III standing to pursue its claims, that Plaintiff's

20   allegations stated a claim for relief, and that Pivotal's motion to strike allegations in the

21   complaint was unwarranted. Dkt. No. 27.

22       Before discovery formally commenced, Class Counsel actively sought the identities of

23   any third parties who may have been involved with the calls. Paronich Decl. ¶¶ 8-10. As a result

24

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD - 2
CASE NO. 3:16-CV-05486-JCS

of Counsel's efforts, Pivotal disclosed that a third-party vendor, EPLJ LLC, and its principal, Gordon Rose, placed the calls to Plaintiff and agreed that a subpoena to EPLJ could be issued before discovery commenced. *See id.*; *see also* Terrell Decl. ¶ 7. Pivotal insisted that it did not have control over EPLJ's business records and that those records were not subject to a litigation hold. Paronich Decl. ¶ 9.

After at least five meet and confer conferences with EPLJ's counsel, EPLJ and Mr. Rose produced voluminous documents and calling data responsive to the subpoena. Paronich Decl. ¶ 11. These documents disclosed that yet another third party—Ytel, Inc.—likely had business records relating to the calling records that EPLJ had produced. *Id.* ¶ 12. Class Counsel conferred with Ytel's counsel regarding these records and ensured that they were preserved. *Id.*

Class Counsel retained an expert who analyzed the calling records and determined that EPLJ and Gordon Rose had placed 11,593,672 prerecorded messages to 1,902,283 unique cell phones. Terrell Decl. ¶ 9. Class Counsel also propounded written discovery requests regarding the relationship between EPLJ, Gordon Rose, and Pivotal, receiving email correspondence, contracts, and draft contracts in return. *Id.* ¶ 5. Class Counsel deposed Gordon Rose and were preparing to depose Pivotal's Rule 30(b)(6) witness when the parties commenced settlement negotiations. *Id.* ¶ 11. Plaintiff responded to Pivotal's document requests and both of its principals were deposed. *Id.* ¶ 8.

Pivotal indicated early on that it planned to aggressively challenge Plaintiff's claims on the merits. During a case management conference held on June 2, 2018, Pivotal asked the Court for permission to move for summary judgment *before* Plaintiff filed its motion for class certification. Pivotal argued it would be more efficient to resolve the case on the merits before class certification. Plaintiff disagreed, arguing that this approach would be inefficient as Pivotal's

1    motion would be futile. The Court ordered the parties to confer on the issue and, absent an

2    agreement, to file a five-page joint letter setting forth their respective positions. Dkt. No. 52. The

3    parties conferred, did not reach agreement, and filed their joint letter on July 21, 2017, Dkt. No.

4    55. Following argument at a subsequent status conference, the Court permitted Pivotal to file its

5    summary judgment motion before Plaintiff filed its class certification motion. Dkt. No. 58.

6          By the time the parties engaged in mediation with Bruce Friedman of JAMS, Plaintiff

7    and its counsel had assembled substantial evidence supporting the conclusion that Pivotal could

8    be held vicariously liable for the calls at issue in the case and as well as legal authority

9    supporting their position. However, on August 9, 2017, the Ninth Circuit issued an opinion in

10   *Jones v. Royal Administration Services, Inc.*, 866 F.3d 1100 (9th Cir. 2017) affirming the district

11   court's dismissal on summary judgment of a very similar case. Pivotal argued that this new

12   decision substantially reduced Plaintiff's chance of prevailing on the merits. Paronich Decl. ¶ 20.

13   Plaintiff's counsel disagreed but were forced to acknowledge that the new decision created

14   substantial risk if the case did not settle.

15         During the mediation, Pivotal told Plaintiff's counsel that it was uninsured and did not

16   have the resources to fund a large settlement. ECF No. 91 at 4:7-19. Plaintiff's counsel were

17   forced to acknowledge that Pivotal did not have the resources to fund a judgment that could run

18   into the billions. *Id.* Plaintiff's counsel did not receive enough information at mediation to

19   understand the amount that Pivotal could pay and thus the parties did not reach agreement that

20   day. However, with the mediator's assistance, they continued their efforts for the next several

21   weeks. Pivotal provided information regarding its financial situation, including an affidavit from

22   its principal, which convinced Plaintiff's counsel that the settlement was in the class's best

23   interests. *Id.*

24

**B.     The settlement.**

The settlement requires Pivotal to pay $9,000,000 into a non-reversionary "Settlement Fund." Terrell Decl., Ex. A § 1.18. Each person who submits a valid claim form will receive a share of the Settlement Fund after deduction of settlement costs. *Id.* § 11.2. The amount each class member receives will be determined based on the following formula that takes into account the number of calls they received: Net Settlement Fund **divided by** the total number of calls received by Class members who submit timely and valid claims forms **multiplied by** the number of calls received by the class member. Class Counsel originally estimated that a claimant who received six calls—the average number of calls received by class members—will receive between $28 and $56 depending on the claims rate. ECF No. 91 at 7:17-22. The settlement administrator received 27,850 claim forms as of May 24, 2018. Terrell Decl. ¶ 24. If the claims period closed today (and assuming all claims are valid), claimants would receive approximately $198. *Id.*

## IV.  AUTHORITY AND ARGUMENT

**A.     The percentage-of-the-fund method is the appropriate method for determining a reasonable attorneys' fee in this case.**

The common fund doctrine is an equitable exception to the American rule that litigants must bear their own attorneys' fees. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). It is well settled that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Id.* The "common fund" doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.* A court with jurisdiction over the fund can "prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit."

1    *Id.* "Ninth Circuit jurisprudence … permits the application of common fund principles where—

2    as in the present case—the class of beneficiaries is identifiable and the benefits can be traced in

3    order to allocate the fees to the class." *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 457 (9th

4    Cir. 2009). In such cases, "the common fund doctrine ensures that each member of the winning

5    party contributes proportionately to the payment of attorneys' fees." *Staton v. Boeing Co.*, 327

6    F.3d 938, 967 (9th Cir. 2003); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d

7    1291, 1300 (9th Cir. 1994) ("those who benefit in the creation of a fund should share the wealth

8    with the lawyers whose skill and effort helped create it").

9        Courts in the Ninth Circuit have discretion to award attorneys' fees using either the

10   percentage of the fund method or the lodestar method when settlement of a class action creates a

11   common fund. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002). The method a

12   district court chooses to use, and its application of that method, must achieve a reasonable result.

13   *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Though

14   courts have discretion to choose which calculation method they use, their discretion must be

15   exercised so as to achieve a reasonable result."). As the Ninth Circuit has instructed,

16   "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it

17   yields an unreasonable result, can be an abuse of discretion." *In re Coordinated Pretrial*

18   *Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997).

19       The Ninth Circuit and district courts in this Circuit have recognized that the percentage-

20   of-the-fund method is the appropriate method for calculating fees when counsel's effort has

21   created a common fund. *See, e.g., In re Bluetooth*, 654 F.3d at 942 ("Because the benefit to the

22   class is easily quantified in common-fund settlements, we have allowed courts to award attorneys

23   a percentage of the common fund in lieu of the often more time-consuming task of calculating

24

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD - 6
CASE NO. 3:16-CV-05486-JCS

1   the lodestar."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008)

2   (observing that "use of the percentage method in common fund cases appears to be dominant"

3   and discussing its advantages over the lodestar method); *see also Destefano v. Zynga*, No. 12-cv-

4   04007-JSC, 2016 WL 537946, at *16-18 (N.D. Cal. Feb. 11, 2016) (using the percentage-of-the-

5   fund method in a case that " involves a common settlement fund with an easily quantifiable

6   benefit to the Class").

7        The lodestar method, by contrast, is typically used when the value of the class's recovery

8   is difficult to determine. *See In re Bluetooth*, 654 F.3d at 941 (courts use the lodestar method

9   when the relief is "primarily injunctive in nature and thus not easily monetized"); *Hanlon v.*

10  *Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (noting that courts use the lodestar method

11  when "there is no way to gauge the net value of the settlement or any percentage thereof");

12  *Simon v. Toshiba Am.*, No. C 07-06202 MHP, 2010 WL 1757956, at *3 (N.D. Cal. Apr. 30,

13  2010) (using the lodestar method where the settlement allowed class members to choose between

14  a voucher or a replacement product and the claims process had not yet concluded, making the

15  value of the benefit to the class uncertain). Courts also use the lodestar method to determine a

16  reasonable fee in cases involving a fee-shifting statute ("such as federal civil rights, securities,

17  antitrust, copyright, and patent acts"). *In re Bluetooth*, 654 F.3d at 941.

18       Courts and commentators have extolled the benefits of the percentage-of-the-fund

19  method, particularly when compared to the inefficiencies created by the lodestar method. As one

20  judge explained, "a number of salutary effects can be achieved by [using the percentage method],

21  including removing the inducement to unnecessarily increase hours, prompting early settlement,

22  reducing burdensome paperwork for counsel and the court and providing a degree of

23  predictability to fee awards." *In re Activision Secs. Litig.*, 723 F. Supp. 1373, 1376 (N.D. Cal.

24

1989). The percentage method aligns lawyers' interest with the interest of class members, since it

encourages lawyers to concentrate their efforts on achieving the highest possible recovery for the

class, which in turn increases the fee award. *See In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294,

300 (3d Cir. 2005) (recognizing that the percentage method "is generally favored in common

fund cases because it allows courts to award fees from the fund 'in a manner that rewards

counsel for success and penalizes it for failure'" (citation omitted)); *see also* William B.

Rubenstein, *Why the Percentage Method?*, 2 Class Action Attorney Fee Digest 93 (March 2008)

("[U]nder the percentage method, counsel has an interest in generating as large a recovery for the

class as possible, as her fee increases with the class's take, while keeping her hours to the

minimum necessary to do the job effectively.");[1] Task Force on Contingent Fees, Tort Trial and

Insurance Practice Section of the American Bar Association, *Report on Contingent Fees in Class*

*Action Litigation*, 25 Rev. Litig. 459, 469 (2006) (noting that the percentage method "has

numerous advantages over the lodestar method," including its simplicity, the disincentive for

attorneys to "bill unnecessary hours or to use three lawyers when one would do," and the fact

that it "ties the lawyers' fee directly to the success of the litigation").

  The percentage method not only gives primary consideration to the results obtained for

the class, it is also consistent with fee calculations in the private market. *See* Alan Hirsch et al.,

Awarding Attorneys' Fees and Managing Fee Litigation, 82-83 (Federal Judicial Center 3d ed.

2015) (explaining that the percentage method "helps ensure that the fee award will simulate

marketplace rates, since most common fund cases are handled on a contingency basis" and

"unlike the lodestar method, the percentage method provides incentives to plaintiff's counsel to

---

[1] Available at http://www.billrubenstein.com/Downloads/Rubenstein%20_Mar08_column.pdf.

1    settle the case early and avoid racking up litigation fees").[2] The lodestar method, by contrast, has

2    been criticized as encouraging lawyers to prolong the litigation and discourage early settlements

3    that would benefit the class. *See Vizcaino*, 290 F.3d at 1050 n.5 ("[I]t is widely recognized that

4    the lodestar method creates incentives for counsel to expend more hours than may be necessary

5    on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward

6    early settlement"); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)

7    (noting that the lodestar method "create[s] an unanticipated disincentive to early settlements,

8    tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed

9    review of line-item fee audits" (alterations in original) (citation omitted)); *Swedish Hosp. Corp.*

10   *v. Shalala*, 1 F.3d 1261, 1268-69 (D.C. Cir. 1993) (explaining that "using the lodestar approach

11   in common fund cases encourages significant elements of inefficiency," including incentivizing

12   lawyers to spend as many hours as possible and avoid early settlement, while "if a percentage-of-

13   the-fund calculation controls, inefficiently expended hours only serve to reduce the per hour

14   compensation of the attorney expending them").

15          Given these views of the two methods, it is not surprising courts use the percentage-of-

16   the-fund method far more often than the lodestar method. *See* William B. Rubenstein, 5 Newberg

17   on Class Actions § 15:67 (5th ed. Dec. 2017) (empirical data shows that "only about 10% of

18   courts use a pure lodestar method" to determine fees in common fund cases); Theodore

19   Eisenberg et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 945, 947

20   (Dec. 2016) (finding that "[t]he vast majority of fee awards during the 2009-2013 period were

21   decided using the percentage method" and "[o]n average, fees were 27% of gross recovery

22   during the 2009-2013 period"); Task Force on Contingent Fees, 25 Rev. Litig. 459, 472 ("Today,

23

24   [2] Available at https://www.fjc.gov/sites/default/files/2015/Awarding%20Attorneys%20Fees %20and%20Managing%20Fee%20Litigation%20Third%20Edition%202015.pdf

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD - 9
CASE NO. 3:16-CV-05486-JCS

the percentage method of calculating fees is explicitly the dominant method for calculating fees," and "the clear trend is away from the lodestar and all of the problems that this method brings."); *see also* Manual for Complex Litigation (Fourth) § 14.121 (2004) ("After a period of experimentation with the lodestar method … the vast majority of courts of appeal now permit or direct district courts to use the percentage-fee method in common-fund cases.").

The percentage-of-the-fund method is the appropriate method for determining a reasonable fee in this case. The benefit to the class is easily quantified. Class Counsel's efforts resulted in a $9,000,000 common fund, all of which will be distributed to class members based on the number of calls they received after settlement expenses, including administration expenses, Court-approved fees, and Court-approved service awards, are deducted. Class Counsel were able to negotiate an early settlement, which kept the total attorneys' fees and costs low in comparison to the benefit to the class. Using the percentage method in this case will recognize Class Counsel's efficiency and their efforts to achieve the highest possible recovery for the class through an early settlement that avoids the risks of litigation.

**B.    A fee award at the Ninth Circuit benchmark of 25% of the Settlement Fund will fairly compensate Class Counsel for their work on behalf of the Settlement Class.**

The Ninth Circuit has instructed that 25% is "a proper benchmark figure," with common fund fees typically ranging from 20% to 30% of the fund. *In re Coordinated Pretrial*, 109 F.3d at 607 (citation omitted); *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). The 25% benchmark is the starting point for the analysis, and the percentage may be adjusted up or down based on the court's consideration of "all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The relevant circumstances include (1) the results achieved for the class, (2) the risk counsel

1    assumed, (3) the skill required and the quality of the work, (4) the contingent nature of the fee,

2    (5) whether the fee is above or below the market rate, and (6) awards in similar cases. *Id.* at

3    1048-50.

4        Class Counsel request an "all in" fee and cost award of $2,250,000, which is 25% of the

5    Settlement Fund they recovered for the Class. Consideration of "the circumstances of the case,"

6    *Vizcaino*, 290 F.3d at 1048, confirm that an award at the benchmark of 25% is appropriate.

7        1.    <u>Class Counsel achieved an excellent settlement for the class.</u>

8        Cognizant of the challenges of this litigation that could have prevented class members

9    from recovering anything, Class Counsel set their sights on a resolution that would ensure class

10   members received some financial compensation for their injuries. They cleared an early

11   procedural hurdle in defeating Pivotal's motion to dismiss. They then focused on marshalling

12   key evidence by obtaining an affidavit from Mr. Rose early in the case, serving targeted

13   discovery on Pivotal, and collecting documents and testimony relating to the calls through

14   subpoenas served on Mr. Rose and EPLJ. During this process, Pivotal insisted that documents in

15   the possession of Mr. Rose and EPLJ were not in Pivotal's possession or control and were not

16   subject to its litigation hold. Paronich Decl. ¶ 9.

17       By obtaining the documents and testimony most necessary to prove their claims, Class

18   Counsel were in a good position to discuss settlement at the mediation with Mr. Friedman at the

19   end of August 2017. Although it took several additional weeks of negotiations to reach a

20   settlement, and the parties resumed negotiations following the Court's feedback at the

21   preliminary approval hearing, the parties reached a $9,000,000 settlement fund that will likely

22   pay class members an average of $28 to $56. This is a highly favorable outcome for the class in

23   any TCPA case. *See In re Omnivision*, 559 F. Supp. 2d at 1046 ("The overall result and benefit

24   to the class from the litigation is the most critical factor in granting a fee award."). In their

1  renewed motion for preliminary approval of the settlement, Plaintiffs provided the Court with a

2  long list of cases that demonstrate that this settlement is in line with (and in fact superior to

3  many) other TCPA settlements in this circuit and around the country. Dkt. No. 91 at 20-21.

4      The efficiency with which Class Counsel obtained this settlement is itself a benefit to the

5  class. Courts recognize that classes benefit from early resolution when "further litigation would

6  have delayed any potential recovery for the Class and have been costly and risky." *Perkins v*

7  *Linkedin Corp.*, No. 13-cv-04303-LHK, 2016 WL 613255, at *2 (N.D. Cal. Feb. 16, 2016).

8  Among other things, Plaintiff would have had to defend against a motion for summary judgment,

9  undertake significantly more discovery, and prevail at class certification, trial, and on appeal. *Id.*;

10 *see also In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, No. 09 MDL 2007, 2014 WL

11 12591624, at *4 (C.D. Cal. Jan. 10, 2014) (recognizing the benefit of counsel's "effective and

12 efficient" prosecution of the case).

13      2.    Class Counsel assumed a significant risk of no recovery.

14      Class Counsel's fee request also reflects that the case was risky and handled on a

15 contingency basis. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir.

16 2015); *Vizcaino*, 290 F.3d at 1048; *see also Jenson. v. First Tr. Corp.*, No. CV 05-3124 ABC,

17 2008 WL 11338161, at *12 (C.D. Cal. June 9, 2008) ("Uncertainty that *any* recovery ultimately

18 would be obtained is a highly relevant consideration. Indeed, the risks assumed by Counsel,

19 particularly the risk of non-payment or reimbursement of expenses, is important to determining a

20 proper fee award." (internal citation omitted)).

21      Class Counsel represented Plaintiff and the class entirely on a contingent basis. Courts

22 recognize that "[w]ith respect to the contingent nature of the litigation … courts tend to find

23 above-market-value fee awards more appropriate in this context given the need to encourage

24 counsel to take on contingency-fee cases for plaintiffs who otherwise could not afford to pay

1   hourly fees." *Destefano*, 2016 WL 537946, at *18 (citing *In re Wash. Public Power*, 19 F.3d at

2   1299). In fact, "[t]his is especially true where, as here, class counsel has significant experience in

3   the particular type of litigation at issue; indeed, in such contexts, courts have awarded an even

4   higher 33 percent fee award." *Id.* (citing *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, et al.,

5   2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005)). Class Counsel have significant experience

6   litigating TCPA claims. Terrell Decl. ¶¶ 26-28; Paronich Decl. ¶¶ 27-31; McCue Decl. ¶¶ 16-24.

7        There was also a very real risk that Class Counsel would not recover their fees and costs

8   at all. Class Counsel have unfortunately lost a number of TCPA cases without receiving a penny

9   in fees. Terrell Decl. ¶ 23; Paronich Decl. ¶ 26; McCue Decl. ¶ 15. Even where Class Counsel

10  have successfully litigated TCPA claims through class certification, summary judgment,

11  decertification, and trial, they faced significant challenges. Broderick & Paronich P.C. and The

12  Law Offices of Matthew McCue were members of the team that successfully obtained, after

13  years of hard-fought litigation, a $20,446,400 jury verdict that the district court trebled to

14  $61,339,200 upon finding that the defendant's TCPA violations were willful and knowing.

15  *Krakauer v. Dish Network L.L.C.*, No. 1:14-cv-333, 2017 WL 2242952 (M.D.N.C. May 22,

16  2017). That verdict is on appeal and it could be years before the class receives payment. Terrell

17  Marshall Law Group PLLC successfully certified a class, defeated defendants' motion for

18  summary judgment, prevailed on their own affirmative motion for summary judgment on the

19  prima facie elements of their TCPA claim, survived a motion to decertify the TCPA class, and

20  were headed to trial when the defendant agreed to settle. *See* Terrell Decl. ¶ 28; *see also Booth v.*

21  *Appstack, Inc.*, No. 13-cv-1533-JLR, 2016 WL 3030256 (W.D. Wash. May 25, 2016). Because

22  the defendant had gone out of business after the lawsuit was filed, the defendant did not have

23

24

1    funds to pay a large judgment. Thus, the settlement amount was a fraction of what plaintiffs

2    could have recovered at trial.

3        Class Counsel's risk in this case was particularly high, considering the Ninth Circuit

4    recently affirmed summary dismissal of two TCPA cases, finding that the defendants could not

5    be held vicariously liable for telemarketing calls made by third parties. *See Jones v. Royal*

6    *Admin. Servs. Inc.*, 887 F.3d 443 (9th Cir. 2018); *Kristensen v. Credit Payment Servs.*, 879 F.3d

7    1010 (9th Cir. Jan. 10, 2018). In fact, Mr. Rose's company was the telemarketer in another case

8    where a motion to dismiss on vicarious liability was granted. *See e.g. Naiman v. TranzVia LLC*,

9    No. 17-cv-4813-PJH, 2017 WL 5992123, at *6-7 (N.D. Cal. Dec. 4, 2017). While there are ways

10   to distinguish these cases, they demonstrate the challenges in proving Pivotal's vicarious liability

11   for its telemarketers' TCPA violations. *See* Dkt. No. 91 at 16-19 (discussing *Jones* and

12   *Kristensen*); *see also* Dkt. No. 95 at 9-18 (discussion of vicarious liability in Pivotal's

13   memorandum in support of preliminary approval). As explained at greater length in Plaintiff's

14   motion for preliminary approval, there was also a risk that Pivotal could not have paid a

15   judgment—which could have exceeded $17 billion—had Plaintiff prevailed on summary

16   judgment or at trial. *See* Dkt. No. 91 at 14-16; *see also* Dkt. No. 95 at 2.

17       3.    Class Counsel's skill and quality of work delivered a recovery for the class.

18       Despite the challenges involved, Class Counsel were able to litigate this case efficiently

19   because of their experience in litigating TCPA claims in class action cases. Class Counsel have

20   litigated dozens of TCPA cases—achieving a successful resolution in many, but also losing

21   some. Terrell Decl. ¶¶ 23, 26-28; Paronich Decl. ¶ 26, 31; McCue Decl. ¶ 15, 24. This depth of

22   experience with TCPA claims and class action litigation allowed Class Counsel to position the

23   case for early resolution, and to negotiate a settlement that capitalized on the claims' strengths

24   while taking into account the risks of continued litigation. *See, e.g.*, Paronich Decl. ¶¶ 2-20.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD - 14
CASE NO. 3:16-CV-05486-JCS

1   "The quality of opposing counsel is also relevant to the quality and skill that class

2   counsel provided," *Destefano*, 2016 WL 537946, at \*17. Pivotal's counsel indicated early in the

3   litigation that it planned to aggressively challenge Plaintiff's claims on the merits, as

4   demonstrated by the memorandum Pivotal filed in support of preliminary settlement approval.

5   *See* Dkt. No. 95. Class Counsel's ability to negotiate a favorable settlement despite the quality of

6   work done by Pivotal's counsel supports their fee request. *See, e.g.*, *Lofton v. Verizon Wireless*

7   *(VAW) LLC*, No. C 13-05665 YGR, 2016 WL 7985253, at \*1 (N.D. Cal. May 27, 2016) (the

8   "risks of class litigation against an able defendant well able to defend itself vigorously" support

9   an upward adjustment in the fee award); *Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009

10  WL 248367, at \*6 (N.D. Cal. Feb. 2, 2009) (where defense counsel "understood the legal

11  uncertainties in this case[] and were in a position to mount a vigorous defense," the favorable

12  settlement was a "testament to Plaintiffs' counsel's skill").

13        4.      Awards in similar cases show that the requested fee is reasonable.

14        Not only is 25% of a common fund the benchmark in this circuit, it is also consistent with

15  fee awards in other TCPA class settlements both in this circuit and in federal courts around the

16  country. Less than two years ago, the District Court for the Western District of Washington

17  awarded a fee of 30% of a $2.5 million settlement fund. *Ikuseghan v. Multicare Health Sys.*, No.

18  C 14-5539 BHS, 2016 WL 4363198, at \*2 (W.D. Wash. Aug. 16, 2016). As part of its analysis,

19  the court surveyed fee awards in TCPA settlements in the Ninth Circuit and discovered that more

20  than half of the awards (14 of 25) were at the 25% benchmark or higher. *Id.* at \*3; *see also In re*

21  *Capital One Tel. Consumer Protection Act Litig.*, 80 F. Supp. 3d 781, 804 (N.D. Ill. 2015)

22  (determining that the typical attorneys' fee award in a consumer case is 30% of the first $10

23  million recovered for the class). Courts around the country frequently award fees equal to 25% of

24  a settlement fund in TCPA cases, or higher. *See Melito v. Am. Eagle Outfitters, Inc.*, No. 14-cv-

2440 (VEC), 2017 WL 3995619, at *17 (S.D.N.Y. Sept. 11, 2017) (awarding a fee of 30% of a $14,500,000 settlement fund); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23 JSS, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (awarding a fee of 30% of a $3.75 settlement fund); *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *13 (N.D. Ill. Aug. 29, 2016) (awarding a fee of 30% of a $12.1 million fund); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501-02 (N.D. Ill. 2015) (awarding a fee of 30% of an $11 million settlement fund); *Lees v. Anthem Ins. Cos., Inc.*, No. 4:13-cv-1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (awarding a fee of 34% of a $4.75 million fund).

A fee award at the 25% benchmark is particularly appropriate in this case because it is an "all in" rate that includes Class Counsel's expenses. This is also not a case in which a megafund settlement would provide Class Counsel with a windfall. *See In re Bluetooth*, 654 F.3d at 942. Consideration of all the relevant factors confirms the reasonableness of a fee award of 25% of the settlement fund.

**C.      A lodestar crosscheck confirms that the requested fee is reasonable.**

In the Ninth Circuit, courts may use a rough calculation of the lodestar as a crosscheck to assess the reasonableness of an award based on the percentage method. *Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."); *see also Glass*, 331 F. App'x at 456-57 (affirming a fee award of 25% of a settlement fund with an "informal" lodestar crosscheck and despite "the relatively low time-commitment by plaintiff's counsel" because "the district court did not abuse its discretion in giving weight to other factors, such as the results achieved for the class and the favorable timing of the settlement"). Courts use a two-step process in applying the lodestar method. First, the court calculates the "lodestar figure" by multiplying the number of hours reasonably expended by a reasonable rate. *Moreno v.*

1    *City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Once the lodestar is determined, the

2    amount may be adjusted to account for several factors, such as the benefit obtained for the class,

3    the risk of nonpayment, the complexity and novelty of the issues presented, and awards in

4    similar cases. *See In re Bluetooth*, 654 F.3d at 942. Foremost among the considerations is the

5    benefit obtained for the class." *Id.*

6          1.    <u>Class Counsel's rates are consistent with rates in the community for similar work performed by attorneys of comparable skill, experience, and reputation.</u>

7    

8          As this Court has recognized, "[a] reasonable hourly rate is the prevailing rate charged by

9    attorneys of similar skill and experienced in the relevant community." *Villalpando v. Exel Direct,*

10   *Inc.*, No. 3:12-cv-04137-JCS, 2016 WL 7740854, at *1 (N.D. Cal. Dec. 12, 2016) (citing

11   *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)). In determining the

12   reasonable hourly rate, courts consider declarations from counsel describing the experience and

13   skill of the attorneys and staff members who worked on the case and declarations of other

14   attorneys regarding the prevailing market rate in the community. *Widrig v. Apfel,* 140 F.3d 1207,

15   1209 (9th Cir. 1998); *see also Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011

16   WL 1230826, at *18-19 (N.D. Cal. Apr. 1, 2011).

17         Class Counsel have provided the Court with declarations describing the basis for their

18   hourly rates, including their education, legal experience, and reputation in the legal community.

19   Terrell Decl. ¶¶ 29-44; Paronich Decl. ¶¶ 27-31; McCue Decl. ¶¶ 16-24; Tindall Decl. ¶¶ 6-8.

20   These declarations include lists of class action cases in which courts have found Class Counsel's

21   rates to be reasonable. Terrell Decl. ¶ 52; Paronich Decl. ¶ 30; McCue Decl. ¶ 23; Tindall Decl.

22   ¶ 12. Class Counsel also provided their rates and qualifications to San Francisco consumer

23   attorney Bryan Kemnitzer, who concluded that Class Counsel's rates are commensurate with

24   those in the local community. *See* Declaration of Bryan Kemnitzer.

Class Counsel's rates are also consistent with those approved by this Court in awarding

fees in other cases. *See Villalpando*, 2016 WL 7785852, at *1 (in a wage and hour class action,

approving comparable rates for partners ($675 - $795), associates ($350-$500), and paralegals

and legal assistants ($150-$200);[3] *Wren*, 2011 WL 1230826, at *18-21 (in 2011, approving

attorney rates ranging from $325 to $650). Other courts in this district have also approved similar

rates for class action attorneys and staff. *See Moore v. Verizon Commc'ns Inc.*, No. C 09-1823

SBA, 2014 WL 588035, at *14 (N.D. Cal. Feb. 14, 2014) (approving partner rates ranging from

$550 to $825 as "reasonable given the geographic location and experience of counsel");

*Nwabueze v. AT&T, Inc.*, No. C 09-01529 SI, 2014 WL 324262, at *2 (N.D. Cal. Jan. 29, 2014)

(finding that partner rates of $625 and $825, listed in ECF No. 248 ¶ 11, were reasonable);

*Wehlage v. Evergreen at Arvin, LLC*, No. 4:10-cv-05839-CW, 2012 WL 4755371, at *2 (N.D.

Cal. Oct. 4, 2012) (approving senior partner rates of $750 and $900, listed in ECF No. 116).

2.      Class Counsel expended a reasonable number of hours litigating the case.

The number of hours that Class Counsel devoted to investigation, discovery, motion

practice, and achieving a favorable settlement is reasonable. "Generally, hours are reasonable if

they were 'reasonably expended in pursuit of the ultimate result achieved in the same manner

that an attorney traditionally is compensated by a fee-paying client.'" *Villalpando*, 2016 WL

7740854, at *2 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983)). Class Counsel have

provided the Court with a narrative description of their work on this case as well as their detailed

---

[3] The attorneys' and staff members' rates and experience are set forth in the declaration class
counsel filed in support of their motion. *See* Declaration of Joshua Konecky in Support of
Plaintiffs' Motion for Attorneys' Fees and Costs at 17-18, *Villalpando v. Exel Direct, Inc.*, No.
3:12-cv-04137-JCS (N.D. Cal. Aug. 19, 2016), ECF No. 344-1.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD - 18
CASE NO. 3:16-CV-05486-JCS

1    billing records,[4] which show the work performed by each attorney and staff member. Terrell

2    Decl. ¶¶ 2-23 & Ex. B; Paronich Decl. ¶¶ 32-36, Ex. A; McCue Decl., Ex. 1; Tindall Decl. ¶ 10.

3          Class Counsel billed a total of 1,294.05 hours in litigating and settling this case. Terrell

4    Decl. ¶ 55. This total excludes time that Class Counsel removed as duplicative, administrative, or

5    arguably excessive. *Id.* ¶ 48. Class Counsel worked collaboratively, but also took care to avoid

6    duplication of effort by dividing tasks according to each professional's skill, experience, and

7    availability, both within and amongst the firms. *Id.* ¶ 19. The resulting hours are those that would

8    be billed to a fee-paying client in a non-contingent case. *Id.* Class Counsel's total lodestar is

9    $663,640.50.

10         Class Counsel litigated this case efficiently from the filing of the complaint through

11    settlement. Class Counsel's experience in litigating TCPA cases allowed them to quickly hone in

12    on the critical factual and legal issues and focus their informal and formal discovery efforts on

13    those issues. The key issues included Pivotal's vicarious liability for the telemarketing violations,

14    evidence of the calls, and expert analysis of the calling records. Following targeted discovery,

15    and with Pivotal's motion for summary judgment and Plaintiff's motion for class certification on

16    the horizon, the parties began settlement discussions. Class Counsel put in the time necessary to

17    develop the central facts of their case and assess the legal issues that would shape the outcome

18    but did so with the goal of achieving an early resolution that ensured class members a recovery.

19    Class Counsel's time records reflect the reasonableness of their efforts.

20

21

---

22    [4] Class Counsel redacted work product from their billing records. *See Democratic Party of Wash.*

23    *v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) (recognizing that litigants are "entitled for good reason to considerable secrecy about what went on between client and counsel, and among counsel" and redactions appropriately "preserve secrecy about something the … lawyers talked

24    about, and some issue of … law they researched").

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD - 19
CASE NO. 3:16-CV-05486-JCS

1          3.      A multiplier is reasonable and appropriate.

2          After determining the lodestar, courts consider the appropriate multiplier to apply. The

3 multiplier can be determined by dividing the total fees sought by the lodestar. *See Hopkins v.*

4 *Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013).

5 "The purpose of this multiplier is to account for the risk Class Counsel assumes when they take

6 on a contingent-fee cases." *Id.* (citation omitted). Multipliers are commonplace in attorneys' fee

7 awards in class actions, particularly when the lodestar method is used to cross-check a

8 percentage-of-the-fund fee. *See* Richard A. Posner, Economic Analysis of Law 783 (8th ed.

9 2011) ("A contingent fee must be higher than a fee for the same legal services paid as or after

10 they are performed. The contingent fee compensates the lawyer not only for the legal services he

11 renders but for the loan of those services. The implicit interest rate on such a loan is high because

12 the risk of default (the loss of the case, which cancels the client's debt to the lawyer) is much

13 higher than in the case of conventional loans, and the total amount of interest is large not only

14 because the interest rate is high but because the loan may be outstanding for years—and with no

15 periodic part payment, a device for reducing the risk borne by the ordinary lender."); *see also*

16 John Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 480

17 (1981) ("A lawyer who both bears the risk of not being paid and provides legal services is not

18 receiving the fair market value of his work if he is paid only for the second of these functions. If

19 he is paid no more, competent counsel will be reluctant to accept fee award cases.").

20          Courts approach multipliers differently when the lodestar method is used a crosscheck

21 than when using the lodestar in fee-shifting cases. In fee-shifting cases, "the question of whether

22 a multiplier is permitted is a question of statutory interpretation" and "courts are somewhat

23 hesitant to make the shift broader than is necessary" since the adversary pays the fee. 5 Newberg

24 § 15:91. "[I]n common fund cases, courts that employ a pure lodestar method are not bound by

1    the Supreme Court's rulings that limit multiplied lodestars in the fee-shifting context." *Id.*; *see*

2    *also Vizcaino*, 290 F.3d at 1051 ("The bar against risk multipliers in statutory fee cases does not

3    apply to common fund cases" and "'courts have routinely enhanced the lodestar to reflect the

4    risk of non-payment in common fund cases.'" (citation omitted)).

5            In the Ninth Circuit, multipliers "ranging from one to four are frequently awarded."

6    *Vizcaino*, 290 F.3d at 1051 n.6. The Ninth Circuit collected dozens of class action lodestars and

7    found that in 83% of the cases the lodestar was between 1.0 and 4.0. *Id.* Courts find higher

8    multipliers appropriate when using the lodestar method as a crosscheck for an award based on

9    the percentage method. *See, e.g., Steiner v. Am. Broad Co., Inc.*, 248 F. App'x 780, 783 (9th Cir.

10   2007) (finding a multiplier of approximately 6.85 to be "well within the range of multipliers that

11   courts have allowed" when crosschecking a fee based on a percentage of the fund); *Johnson v.*

12   *Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-CV-03698-NC, 2018 WL 2183253, at *7 (N.D. Cal.

13   May 11, 2018) (finding a 4.375 multiplier to be reasonable in crosschecking a fee of 25% of a

14   settlement fund); *McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, No. 1:16-cv-00157-

15   DAD-JLT, 2017 WL 5665848, at *8 (E.D. Cal. Nov. 27, 2017) ("awarding attorneys' fees at a

16   25 percent benchmark of the common fund would yield a lodestar multiplier of 3.95, which is

17   within the range of acceptable lodestar multipliers previously approved by this court and

18   others"); *Hillson v. Kelly Servs. Inc.*, No. 2:15-cv-10803, 2017 WL 3446596, at *6 (E.D. Mich.

19   Aug. 11, 2017) (finding a multiplier of 4 to be reasonable in crosschecking a fee of 25% of a

20   settlement fund); *Pan v. Qualcomm Inc.*, No. 16-CV-01885-JLS-DHB, 2017 WL 3252212, at

21   *13 (S.D. Cal. July 31, 2017) (finding a multiplier of 3.5 to be reasonable for a fee equal to

22   24.6% of the settlement value); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358

23   (S.D.N.Y. 2002) (finding a "modest multiplier of 4.65 is fair and reasonable" when cross-

24

checking a fee of 33⅓% of the settlement fund); *Di Giacamo v. Plains All Am. Pipeline*, No. Civ. A. H-99-4137, 2001 WL 34633373, at *11 (S.D. Tex. Dec. 19, 2001) (finding a multiplier of 5.3 appropriate in crosschecking a fee of 30% of the settlement fund); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995) (finding that a multiplier of 3.6 was "well within the acceptable range" and explaining that "[m]ultipliers in the 3-4 range are common").

Courts may consider the following factors when assessing the reasonableness of a multiplier: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Vizcaino*, 290 F.3d at 1051 (noting that the district court found a 3.65 multiplier to be reasonable after considering the factors in *Kerr*). Application of these factors confirms that a multiplier of 3.39 is reasonable and appropriate in this case. Class Counsel took on the case on a contingent basis and to the preclusion of other work. They were able to achieve a favorable settlement for the class that is comparable to other similar settlements (and superior to many) despite the challenges presented by this litigation and with great efficiency. Class Counsel have substantial experience in litigating TCPA class actions and have earned reputations for skilled representation of victims of TCPA violations. The proposed multiplier is particularly appropriate because Class Counsel request a fee at the Ninth Circuit's benchmark of 25% of the settlement, are not seeking separate reimbursement for their costs, and

1   will continue to respond to class members calls and work with the settlement administrator

2   through final approval and distribution of the settlement funds.

3   **D.      Class Counsel's litigation costs were necessarily and reasonably incurred.**

4          Rule 23(h) authorizes courts to award costs authorized by law or the parties' agreement.

5   Attorneys who create a common fund are entitled to reimbursement of their out-of-pocket

6   expenses so long as they are reasonable, necessary and directly related to the work performed on

7   behalf of the class. *Vincent v. Hughes Air W.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Corson*

8   *v. Toyota Motor Sales U.S.A., Inc.*, No. CV 12-8499-JGB, 2016 WL 1375838, at *9 (C.D. Cal.

9   Apr. 4, 2016) ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-

10  distance telephone calls, computer legal research, postage, courier service, mediation, exhibits,

11  documents scanning, and visual equipment are typically recoverable"); *Hopkins v. Stryker Sales*

12  *Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *6 (N.D. Cal. Feb. 6, 2013) (awarding

13  costs for document review, depositions, and experts). While Class Counsel do not request

14  reimbursement of their costs separate from the requested fee, they have provided the Court with

15  a chart that lists their litigation costs by category. These costs, the bulk of which were incurred

16  retaining an expert to perform the data analysis essential to proving Pivotal's liability and

17  damages, total $50,874.04. Terrell Decl. ¶¶ 53, 56; Paronich Decl. ¶ 37; McCue Decl. ¶ 30.

18  **E.      Plaintiff requests a modest service award of $2,000.**

19         Class representatives are eligible for reasonable service awards. *Staton*, 327 F.3d at 977.

20  The Ninth Circuit has explained that service awards that are "intended to compensate class

21  representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'"

22  *In re Online DVD*, 779 F.3d at 943 (quoting *Rodriguez v. W. Publishing*, 563 F.3d 948, 958-59

23  (9th Cir. 2009)). The awards recognize the effort class representatives expend and the financial

24  or reputational risk they undertake in bringing the case, and to recognize their willingness to act

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD - 23
CASE NO. 3:16-CV-05486-JCS

1    as private attorneys general. *W. Publishing*, 563 F.3d at 958-59. The factors courts consider

2    include the class representative's actions to protect the interests of the class, the degree to which

3    the class has benefitted from those actions, the time and effort the class representative expended

4    in pursuing the litigation, and any risk the class representative assumed. *Staton*, 327 F.3d at 977.

5    Courts also "balance 'the number of named plaintiffs receiving incentive payments, the

6    proportion of the payments relative to the settlement amount, and the size of each payment.'"

7    *Wren v. RGIS Inventory Specialists*, No. C 06-05778 JCS, 2011 WL 1230826, at *32 (N.D. Cal.

8    Apr. 1, 2011) (quoting *Staton*, 327 F.3d at 977).

9            Fred Heidarpour, the president of Plaintiff Abante Rooter and Plumbing, Inc., filed a

10   declaration in support of Plaintiff's motion for preliminary approval describing the time he and

11   his wife devoted to this case. Among other things, they documented the calls they received,

12   contacted Pivotal about the calls, assisted Class Counsel with developing the facts in the

13   complaint, responded to discovery requests and collected responsive documents, sat for

14   depositions, and regularly communicated with Class Counsel about the progress of the case. Dkt.

15   No. 75. Mr. Heidarpour estimates that they spent at least 75 hours working on the case, time that

16   otherwise they would have devoted to their business. *Id.* ¶¶ 3, 14.

17           The requested $2,000 service award is reasonable, particularly since it is less than half of

18   the Ninth Circuit's benchmark for service awards. *See In re Yahoo Mail Litig.*, No. 13-CV-4980-

19   LHK, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established

20   $5,000.00 as a reasonable benchmark [for service awards]."); *Miller v. Ghirardelli Chocolate*

21   *Co.*, No. 12-CV-04936, 2015 WL 758094, at *7 (N.D. Cal. Feb. 20, 2015) (awarding $5,000

22   service awards to plaintiffs who searched personal records, were deposed, responded to

23   interrogatories and requests for production, provided declarations, and attended or consulted

24

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD - 24
CASE NO. 3:16-CV-05486-JCS

1  during mediation); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329-30 & n.9 (W.D.

2  Wash. 2009) (approving $7,500 incentive awards where the plaintiffs assisted class counsel,

3  responded to discovery, and reviewed settlement terms, and collecting decisions approving

4  service awards ranging from $5,000 to $40,000); *see also In re Online DVD*, 779 F.3d at 942

5  (rejecting argument that a $5,000 incentive award created a conflict of interest between the

6  plaintiff and class members who received payments of $12 from the settlement fund).

7  ## V.  CONCLUSION

8      Class Counsel request that the Court approve an all-in fee and cost award of $2,250,000,

9  which is 25% of the settlement fund. Plaintiff requests a service award of $2,000 in recognition

10  of its representation of the class in this case.

11      RESPECTFULLY SUBMITTED AND DATED this 25th day of May, 2018.

12                        TERRELL MARSHALL LAW GROUP PLLC

13                        By:  /s/ Jennifer Rust Murray, *Admitted Pro Hac Vice*
                            Beth E. Terrell, CSB #178181

14                              Email:  bterrell@terrellmarshall.com
                            Jennifer Rust Murray, *Admitted Pro Hac Vice*

15                              Email:  jmurray@terrellmarshall.com
                            Adrienne D. McEntee, *Admitted Pro Hac Vice*

16                              Email:  amcentee@terrellmarshall.com
                            936 North 34th Street, Suite 300

17                              Seattle, Washington 98103-8869
                            Telephone: (206) 816-6603

18                              Facsimile: (206) 319-5450

19                              Steven M. Tindall, SBN #187862
                            Email: smt@classlawgroup.com

20                              GIBBS LAW GROUP LLP
                            505 14th Street, Suite 1110

21                              Oakland, California 94612
                            Telephone: (510) 350-9700

22                              Facsimile: (510) 350-9701

23

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Edward A. Broderick
Email:  ted@broderick-law.com
Anthony I. Paronich, *Admitted Pro Hac Vice*
Email:  anthony@broderick-law.com
BRODERICK & PARONICH, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

Matthew P. McCue
Email:  mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. McCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

*Attorneys for Plaintiff*

1

<u>CERTIFICATE OF SERVICE</u>

2

I, Jennifer Rust Murray, hereby certify that on May 25, 2018, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4

such filing to the following:

5

        Antony Buchignani, SBN #186528
        Email:  tbuchignani@tocounsel.com

6

        Drew Hansen, SBN #218382
        Email:  dhansen@tocounsel.com

7

        Amy Burke, SBN #276699
        Email:  aburke@tocounsel.com

8

        Seth M. Goldstein, SBN #232071
        Email: sgoldstein@tocounsel.com

9

        THEODORA ORINGHER PC
        1840 Century Park East, Suite 500

10

        Los Angeles, California 90067-2120
        Telephone: (310) 557-2009

11

        Facsimile: (310) 551-0283

12

        *Attorneys for Defendant*

13

DATED this 25th day of May, 2018.

14

            TERRELL MARSHALL LAW GROUP PLLC

15

16

        By:  /s/ Jennifer Rust Murray, *Admitted Pro Hac Vice*
            Jennifer Rust Murray, *Admitted Pro Hac Vice*

17

            Email: jmurray@terrellmarshall.com
            936 North 34th Street, Suite 300

18

            Seattle, Washington 98103
            Telephone (206) 816-6603

19

            Facsimile: (206) 319-5450

20

            *Attorneys for Plaintiff*

21

22

23

24