Timothy R. Hanigan (SBN 125791)
LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, CA 91367
Tel: (818) 883-5644
Fax: (818) 704-9372
Attorneys for Objector/Class Member,
Route 42 Dance Academy, LLC

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>PIVOTAL PAYMENTS INC., d/b/a CAPITAL PROCESSING NETWORK and CPN,<br><br>Defendant. | Case No. 3:16-cv-05486-JCS<br><br>**ROUTE 42 DANCE ACADEMY, LLC'S RESPONSE TO PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS; REPLY TO DEFENDANT PIVOTAL PAYMENTS, INC.'S RESPONSE TO OBJECTIONS** |

**TABLE OF CONTENTS**

| | |
|---|---|
| **I.** | **Pivotal's Response Does Not Clearly Deny Hidden Profit, Nor Does it Deny it Can Pay More than $9 Million.** ................................................................. 1 |
| **II.** | **Pivotal's Current Financial Status is Highly Relevant.** ............................... 3 |
| **III.** | **Class Counsel are Not Entitled to $2.25 Million for Their Limited Work and Poor Results.** ................................................................................................. 6 |
| **IV.** | **Dance Academy's Objection is in Good Faith and the Parties' *Ad Hominem* Attacks Should be Disregarded.** ...................................................... 9 |
| | **CONCLUSION** ................................................................................................13 |

# TABLE OF AUTHORITIES

**Cases**

*7-Eleven, Inc. v. Etwa Enter.*, 2013 WL 2947112 (D. Md. Jun. 12, 2013) ................ 8

*Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ....................................................................................................... 6, 7

*Blessing v. Sirius XM Radio, Inc.*, 2011 WL 5873383, No. 09 CV 10035(HB) (S.D.N.Y. Nov. 22, 2011) ................................................................................ 13

*Chambers v. Whirlpool*, No. 8:11-cv-01733, 2016 WL 9451360 (C.D. Cal. Aug. 12, 2016) ............................................................................................................. 11

*Edwards v. Nat'l Milk Prod. Fed.*, 4:11-cv-04766-JSW (N.D. Cal. June 26, 2017) .. 11, 13

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ................................................ 12

*Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) ...................................................................................................... 6

*Garber v. Office of Commissioner of Baseball*, 2017 WL 752183 (S.D.N.Y. Feb. 27, 2017) ............................................................................................................... 10

*Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434 (D. Md. 1998) ..................... 4

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................... 7

*In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 942 (9th Cir. 2011) ............. 7

*In re HP Inkjet Litig.*, 716 F.3d 1173 (9th Cir. 2013) ................................................ 7

*In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420-YGR, 2017 WL 6497597 (N.D. Cal. Dec. 19, 2017) ................................................................... 4

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 12-4671-CV, 2016 WL 3563719 (2d Cir. 2016) ..................................................... 12

*In re TJX Cos. Retail Sec. Breach Litig.*, 584 F.Supp.2d 395 (D. Mass. 2008) ........... 6

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597 (9th Cir. 2018) .................................................................................... 4

*Jeffrey A. Thomas v. Dun & Bradstreet Cred. Corp.*, 2:15-cv-03194-BRO (C.D. Cal. Mar. 22, 2017) ............................................................................................. 11, 13

*Jones v. Royal Administration Services, Inc.*, 866 F.3d 1100 (9th Cir. 2017), *opin. amended and superseded*, 887 F.3d 443 (9th Cir. 2018)............................................ 1

*Kranson v. Federal Express Corp.,* No. 11–cv–5826–YGR, 2013 WL 6503308 (N.D. Cal. Dec. 11, 2013) ............................................................................................... 7

*Litwin v. iRenew Bio Energy Sols.*, LLC, 172 Cal. Rptr. 3d 328 (Cal. App. 2d Dist. 2014), *as modified* (May 29, 2014) ......................................................................12

*Manner v. Gucci Am., Inc.*, 15-CV-00045-BAS(WVG), 2016 WL 6025850 (S.D. Cal. Oct. 13, 2016) .......................................................................................................... 8

*Nat'l Alliance for Accessability v. Hull Storey Retail Group*, No. 2012 WL 3853520 (M.D. Fla. Jun 28, 2012) ........................................................................................ 8

*Ohayon v. Hertz Corp.*, No. 5:11-CV-01662 EJD, 2012 WL 4936058 (N.D. Cal. Oct. 16, 2012)................................................................................................................. 2

*Powell v. U.S. Dept. of Justice,* 569 F.Supp. 1192 (N.D. Cal. 1983) .......................... 7

*Rinky Dink, Inc. v. World Business Lenders, LLC*, No. C14-0268-JCC, 2016 WL 3087073 (W.D. Wash. May 31, 2016).................................................................... 3

*Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003)...................................................... 2

*Teague v. Bakker*, 213 F. Supp. 2d 571 (W.D.N.C. 2002) .......................................... 4

*Trulsson v. Cnty. of San Joaquin Dist. Attorney's Office,* No. 2:11–cv–02986 KJM DAD, 2014 WL 5472787 (E.D. Cal. Oct. 28, 2014) .............................................. 7

*White v. City of Richmond,* 559 F.Supp. 127 (N.D. Cal. 1982).................................... 7

**Rules**

FED. R. CIV. P. 23............................................................................................................ 4

**Other Authority**

ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion 07-446 (May 5, 2007) ..........................................................................................10

## I. Pivotal's Response Does Not Clearly Deny Hidden Profit, Nor Does it Deny it Can Pay More than $9 Million.

The parties sell this settlement, along with attorneys' fees with a 3.4 lodestar multiplier, on the premise that $9 million is the most Pivotal could afford. Otherwise, there is no sensible explanation for a less than 0.1% recovery on $5 billion in class damages (excluding treble damages).[1]

The Fayer declaration and unaudited financial records only support that tremendous discount if the Court indulges Pivotal every benefit of the doubt. As the Dance Academy explained, "general and administrative expenses", "operating expenses", and "professional fees" are stated in such broad terms as to hide substantial profit. Even though it was class counsels' duty to scrutinize this information, they do not address the issue in their motion.

Pivotal responds that this is just speculation. Dkt. 130, at 14. Indeed, the Dance Academy, the rest of the class, this Court, and even class counsel can only speculate as to Pivotal's financial condition with the bare-bone records submitted. Only Pivotal can confirm or deny if these expenses encompass large salaries to principals designed to give the appearance of a loss.

The parties attempt to dismiss this argument by suggesting the Dance Academy has the burden of proving Pivotal can afford to pay more. But the parties, not the Dance Academy, are the ones who shoulder the burden of establishing the fairness,

---

[1] Dance Academy relies on the detailed analysis in its objection of why *Jones* would not inevitably result in summary judgment on vicarious liability. Dkt. 112, at 1-2, 7-11 (citing *Jones v. Royal Administration Services, Inc*., 866 F.3d 1100 (9th Cir. 2017), *opin. amended and superseded*, 887 F.3d 443 (9th Cir. 2018).

1

reasonableness, and adequacy of their proposed settlement. *Ohayon v. Hertz Corp.*, No. 5:11-CV-01662 EJD, 2012 WL 4936058, at *4 (N.D. Cal. Oct. 16, 2012) (citing *Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir.2003)). It is their obligation to demonstrate that their pretext for settling for a miniscule fraction of class damages is reasonable.

Rather than denying hidden profit outright, Pivotal cryptically replies that "even if *some portion* of these categories of expenses included such items (which is not the case), the dollar amounts at issue are not significant enough to materially affect the conclusion that the settlement amount is fair and reasonable given Pivotal's financial situation. . . ." Dkt. 130, at 14 (emphasis added). What does Pivotal mean by "some portion of these categories"? If it denies that "some portion" of these categories include such items, does that mean other portions of these categories include them? If the Dance Academy's allegations are untrue, Fayer should have submitted a declaration under oath clearly and unequivocally denying them. Pivotal's ambiguous response only heightens the need for detailed financial records that accurately reflect the company's financial status.

Further, a cursory look at Fayer's declaration reveals that the dollar amount of the categories identified by the Dance Academy (paragraph 3, lines 15-16; paragraph 5, lines 5-6) could substantially improve the settlement. Far more would appear available to the class. Significantly, Pivotal's motion fails to affirmatively state that it cannot afford to pay more. Pivotal just states the obvious; that it "could not possibly pay anything close to the statutory exposure [of $17 billion] in this case." Dkt. 130, at

3. That potentially leaves millions on the table that could have been secured for the class.

One of the opinions cited by class counsel, *Rinky Dink, Inc. v. World Business Lenders, LLC*, illustrates the type of reliable financial data that would confirm inability to pay a larger amount. No. C14-0268-JCC, 2016 WL 3087073, at *2 (W.D. Wash. May 31, 2016). As class counsel noted, the court in *Rinky Dink* approved a "settlement providing class members a fraction of their statutory damages because the defendants' financial condition meant 'they are unable to pay a larger settlement amount.'" Dkt. 127, at 9 (citing *Rinky Dink*, 2016 WL 3087073, at *2). The defendant in *Rinky Dink* produced tax returns, audited and unaudited profit and loss statements, balance sheets, income statements, and a UCC financing summary." *Id.* at *3; *see also* No. C14-0268-JCC, Dkt. 79, at 3. Only then was the court "satisfied that, based on Defendants' financial condition, they are unable to pay a larger settlement amount." *Rinky Dink*, 2016 WL 3087073, at *2.

Those are the types of records which class counsel should have insisted on before agreeing to a more than 99.9% discount on class damages. This Court should not approve the settlement without more than the conclusory statements and bare-bones unaudited financial records justifying the settlement amount.

## II. Pivotal's Current Financial Status is Highly Relevant.

The parties are also mistaken that the Court need only consider Pivotal's financial status at the time of the agreement. Rule 23 does not say a district court may approve a settlement if it *was* fair, reasonable, and adequate at the time it was formed.

3

Instead, the court must find, at the final approval hearing, that the settlement "*is* fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2) (emphasis added). That reading corresponds with the district court's "continuing duty to act on behalf of the class." *Teague v. Bakker*, 213 F. Supp. 2d 571, 576 (W.D.N.C. 2002); *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 440 (D. Md. 1998) ("the Court has a continuing duty to act as a fiduciary to the members of the class"); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 610 (9th Cir. 2018).

The parties cite no authority for their belief that the only relevant time period is when the deal was consummated. Dkt. 127, at 20. On the other hand, counsel for the Dance Academy found an opinion in this District specifically contemplating the settlement's fairness both at the time it was executed, and at the time of the fairness hearing. *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420-YGR, 2017 WL 6497597, at *2 (N.D. Cal. Dec. 19, 2017) ("Based on the record at the time of the settlement, the Court had no reason to believe that the settlement terms and amount for these defendants were not fair and reasonable, nor does it have reason to doubt the fairness and reasonableness now").

The question of Pivotal's financial status should not be a snapshot in time. If Pivotal can now afford millions or tens of millions more, why should this court rule that a settlement for less than 0.1% of class damages is fair, reasonable, or adequate? Class counsels' claim that "it is highly unlikely that the company's financial

4

condition has drastically improved" is rank speculation. Dkt. 127, at 20. They do not offer any reason for the Court to believe that to be true.

Further, the unaudited financial information, current through August 31, 2017, was even out of date at the time of the January 31, 2018 amended settlement, not to mention the forthcoming October 5, 2018 fairness hearing. This Court should not grant final approval without demanding more detailed and current records.

Class counsel actually propose that more current records should not be produced because they would have to be disclosed to the entire class, and in that event the class members would have no opportunity to comment upon them. Dkt. 127, at 20 ("Nor would it make any sense for Pivotal to produce its current financials given that the information would not be available to the class and they would have no opportunity to comment upon it."). This is the first time class counsel have shown any interest in the class accessing Pivotal's records (they actually argued against it in the July 13, 2018 hearing),[2] which the Dance Academy has advocated from the outset. The notion that it would be inconvenient for the parties is not good enough. More detailed and current records should be produced and disclosed to the class. Notice should re-issue to allow time for class members to review the documents and assert any objections.

---

[2] Audio available at Dkt. 116. Dance Academy has requested the transcript from this hearing, but it is not available at the time of filing this response. Dkt. 131.

### III. Class Counsel are Not Entitled to $2.25 Million for Their Limited Work and Poor Results.

Considering that the class members recoup less than 0.1% of their damages, the case was on file less than a year before settling,[3] and class counsel invested just 1,294 hours, $2.25 million in attorneys' fees is far too much. That is particularly so considering there is little reason to believe the parties' primary justification for the settlement—*i.e.,* that Pivotal could pay no more than $9 million.

The parties dress up the net $5.5 million to the class by estimating "an average payment of $142.91" to anyone who bothered to file a claim. Dkt. 127, at 1. But that number has only grown because far fewer class members (2%) filed claims than the parties anticipated (10%). Dkt. 70, at 16; Dkt. 91, at 7. Yes, some courts have approved settlements with similarly low claim rates. But, 2% is a poor turnout, even for a consumer class action. *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012) (discussing "the prevailing rule of thumb" for claims rates "with respect to consumer class actions is 3-5%"); *In re TJX Cos. Retail Sec. Breach Litig.*, 584 F.Supp.2d 395, 404 (D. Mass. 2008) ("It is not unusual for only 10 or 15% of the class members to bother filing claims."); Dkt. 112, at 14.

Class counsel rely on *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015), which upheld a comparable per-claimant recovery ($151) in a TCPA case. Dkt. 127, at 10. Considering the similarities in the

---

[3] Dkt. 71-1, at 1-2 (explaining that suit was filed on September 26, 2016 and the parties reached an agreement to settle on September 25, 2017).

cases, *Bayat* is instructive on fees. *See also* Dkt. 112, at 17-18. The net recovery for each class member here ($2.89)[4] is nearly identical to *Bayat* ($2.85). *Bayat*, 2015 WL 17744342, at *5.

Class counsel sought 25% of the fund, which would have produced a 2.76 lodestar multiplier. *Id.* at *8. The court elected to employ the lodestar method because the percentage method "would yield windfall profits for class counsel in light of the hours spent on the case." *Id.* at 8-9 (citing *In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)). The court could not justify the 2.76 multiplier "in light of the relatively limited class relief obtained[.]" *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983); *In re HP Inkjet Litig.*, 716 F.3d 1173, 1178-79 (9th Cir. 2013)). Specifically, just as in this case, "[t]he monetary relief is less than 1% of the full potential verdict value [and even less here], and less than 2% of the class will receive any monetary value."[5] *Id.*

As such, the court allowed a 1.5 multiplier, which amounted to 13.5% of the common fund. *Id.* at *9-10 (citing *Kranson v. Federal Express Corp.,* No. 11–cv–5826–YGR, 2013 WL 6503308, at *13 (N.D. Cal. Dec. 11, 2013) (awarding 1.5 multiplier); *Trulsson v. Cnty. of San Joaquin Dist. Attorney's Office,* No. 2:11–cv–02986 KJM DAD, 2014 WL 5472787, at *9 (E.D. Cal. Oct. 28, 2014) (same); *Powell v. U.S. Dept. of Justice,* 569 F.Supp. 1192, 1204 (N.D. Cal. 1983) (same); *White v. City of Richmond,* 559 F.Supp. 127, 134 (N.D. Cal. 1982) (same)). Although Dance

---

[4] $5.5 million % 1,900,000 = $2.89.
[5] 37,970 claims filed among 1,902,283 members = 1.99% claims rate.

Academy believes class counsel should be held to their lodestar, in no case should they be permitted anything beyond the fees allowed in *Bayat*. Certainly, the 3.4 multiplier should not be seriously entertained.

Even then, the actual multiplier is likely much higher than 3.4. Class counsel dedicated a significant portion of their billing to mediation and settlement rather than litigation. *See e.g.,* Dkts. 103-2, 105. The fact "that a substantial portion of the requested fees were incurred *after* the settlement was reached at the mediation" "casts doubt on the value to the class of the billed hours." *See Manner v. Gucci Am., Inc.*, 15-CV-00045-BAS(WVG), 2016 WL 6025850, at *4 (S.D. Cal. Oct. 13, 2016) (emphasis original). Class counsels' actual lodestar is likely much lower than the $663,640.50 represented, which means the real multiplier necessary to reach $2.25 million is probably even greater than the already high 3.4 multiplier.

Class counsel attempt to whittle down the multiplier based on anticipated work, including attending the final approval hearing, working with the settlement administrator, and responding to class members. Dkt. 127, at 25. The Court should not consider anticipated work as part of its lodestar inquiry. *See 7-Eleven, Inc. v. Etwa Enter.*, 2013 WL 2947112, at *5 (D. Md. Jun. 12, 2013) ("Plaintiff has not identified any authority that would entitle it to an award of 'anticipated legal fees and costs,' nor is the court aware of any"); *Nat'l Alliance for Accessability v. Hull Storey Retail Group*, No. 2012 WL 3853520, at *4 (M.D. Fla. Jun 28, 2012) ("The law is settled that in calculating the lodestar, the Court must use 'the number of hours reasonably **expended** on the litigation,' and the movant 'should submit evidence

8

supporting the hours worked" (quoting *Hensley*, 461 U.S. at 433 and adding emphasis)).

### IV. Dance Academy's Objection is in Good Faith and the Parties' *Ad Hominem* Attacks Should be Disregarded.

Perhaps nothing illustrates the poor relief offered in this settlement and the overreaching request for attorneys' fees more than the parties' pages of personal attacks on Dance Academy's counsel. Obviously, *ad hominem* attacks are not legal argument. Worse, the ones here are based on misrepresentations and half-truths.

Pivotal alleges that the Dance Academy's objection should be questioned because its counsel never approached class counsel about accessing the Fayer declaration. As noted by this Court during the July 13, 2018 hearing,[6] that request would have been futile.

Nor is the Dance Academy's objection somehow improper because it was filed on the deadline for filing objections. Obviously, the class notice failed to specify that timely objections filed on the day of the deadline would be regarded as made in bad faith. Class members should be free to wait until the end of the objection period to gather as much information as possible to make an informed choice on the settlement. If the parties wanted objections sooner, they should have set the deadline earlier.

There is also nothing improper about one of Dance Academy's out-of-state counsel, who was specifically disclosed in the objection, not appearing in favor of local counsel's appearance. This is consistent with the American Bar Association's (ABA) opinion regarding the unbundling of legal services and the ability of an

---

[6] *Supra* n. 1.

9

attorney to provide limited representation of a client.[7] "Lawyers generally are permitted to limit the scope of their representation of a client pursuant to Rule 1.2(c)."[8] The *Garber* case referenced by Pivotal, while having admittedly harsh words for Mr. Bandas, initially involved assistance of a *pro se* litigant.[9] And even in that case, the court declined to enter sanctions.

There is no evidence that Dance Academy's objection is anything but meritorious. While Dance Academy did echo some of the Court's concerns articulated during the fairness hearing (which the parties somehow construe as inappropriate), it made several unique arguments, some of which were embraced. For example, Dance Academy identified that $107,625 of class counsels' lodestar was unsubstantiated (Dkt. 112, at 3 n.6), and class counsel responded by submitting a declaration from Matthew McCue substantiating his lodestar. Dkt. 126. Though the Court denied Dance Academy's request to unseal the Fayer declaration, it still ordered the parties to disclose it to Dance Academy's counsel. Dkt. 123. This, in turn, allowed Dance Academy to serve as the sole voice of dissension to the parties' collaborative position that these records establish Pivotal could pay no more. Obviously, Dance Academy has voiced valid concerns with the settlement.

---

[7] ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion 07-446 (May 5, 2007). (http://www.americanbar.org/content/dam/aba/migrated/media/youraba/200707/07_446_2007.authcheckdam.pdf).
[8] *Id.* at 1, n.2.
[9] *Garber v. Office of Commissioner of Baseball*, 2017 WL 752183, at *2 (S.D.N.Y. Feb. 27, 2017).

Otherwise, class counsel and Pivotal paint misleading accounts of Mr. Hanigan's and Mr. Bandas' prior representation of other class members in other cases. No court has ever found that "Mr. Hanigan's objections lack merit because [his] motivation is to extract a fee rather than to improve the settlement for the benefit of the class." Dkt. 127, at 18. As explained previously through sworn testimony, Mr. Hanigan has never filed a baseless objection, nor has he ever been sanctioned for having done so. *See Chambers v. Whirlpool Corp., et al.*, No. 8:11-cv-01733, Doc 382-2 (C.D. Cal.). He receives hourly compensation for his work on all objections and has never received financial benefit from settling an objection or an appeal of an objection. *Id.*

The parties attack Mr. Hanigan as a "serial objector" based on *dicta* from a single opinion that is, frankly, mistaken. *See Chambers v. Whirlpool*, No. 8:11-cv-01733, 2016 WL 9451360, at *2 (C.D. Cal. Aug. 12, 2016). In *Whirlpool*, the district court declined to impose sanctions, and the appeal from that valid objection is pending before the Ninth Circuit with briefing complete. *See Chambers*, No. 8:11-cv-01733-FMO, Dkt. 394 (C.D. Cal. Sept. 30, 2017) (denying sanctions motion); *Chambers*, No. 16-56666 (9th Cir.). Elsewhere, district courts have rejected that label as applied to Mr. Hanigan, and have insisted on sticking to the merits. *See e.g., Jeffrey A. Thomas v. Dun & Bradstreet Cred. Corp.*, 2:15-cv-03194-BRO, Dkt. 80, at 37 n.11 (C.D. Cal. Mar. 22, 2017) (casting aside the professional objector label and finding merit in the arguments advanced on behalf of Hanigan's client); *Edwards v. Nat'l Milk Prod. Fed.*, 4:11-cv-04766-JSW, Dkt. 478, at 14 (N.D. Cal. June 26, 2017)

("The parties briefed extensively which objectors are or are not so-called, quote, 'professional objectors,' unquote. The Court does not need to hear argument on these issues. The Court wishes to hear, rather, substantive discussion of the settlement and the merits of the pending motions and objections today, and not *ad hominem* or personal attacks on the people making various arguments.").

While the parties cherry pick cases where courts have gone along with the "serial objector" narrative, they leave out the numerous instances in which clients of Mr. Bandas and Mr. Hanigan have succeeded in overturning unfair settlements and excessive fee awards. *See, e.g., In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 12-4671-CV, 2016 WL 3563719, at *12 (2d Cir. June 30, 2016) (Mr. Bandas' client was part of an effort in which the court "vacate[d] the district court's certification of the class, reverse[d] approval of the settlement, and remand[ed] for further proceedings not inconsistent with this opinion"); *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) (reversal of an unfair and even "scandalous" settlement on grounds raised in objection asserted by Mr. Bandas' client); *Litwin v. iRenew Bio Energy Sols.*, LLC, 172 Cal. Rptr. 3d 328, 333 (Cal. App. 2d Dist. 2014), *as modified* (May 29, 2014) (reversal of final approval of settlement based on a due process arguments advocated by Mr. Bandas' client). Less than a year ago, a client of Mr. Bandas and Mr. Hanigan succeeded in reducing excessive fees sought by class action attorneys by $6.7 million. *In re Lithium Ion Batteries Antitrust Litig.*, 4:13-md-02420-YGR, Doc. 2005 (Oct. 27, 2017) (reducing fees), Doc. 1906 (objection advocating fee reduction adopted). A few months earlier,

one of Mr. Bandas' clients assisted in returning $4.3 million in excessive fees to the class members. *See Edwards v. National Milk Prod. Fed.*, 11-04766, Doc. 485, at 12, 19 (N.D. Cal. June 26, 2017); Doc. 441 (objection of Ira Conner Erwin). Another one of their clients successfully prosecuted an objection to an excessive fee request in *Dun & Bradstreet*, 2-15-CV-03194, Doc. 70, at 1, 6-11 (objection), Doc. 80 (order awarding fees). The district court specifically "agree[d] with several of the objections made by" Mr. Bandas's and Mr. Hanigan's client, and reduced fees from 30% to 27%. *Id.* at 37–38, 42.

Clearly, courts have recognized the validity of objections asserted by clients of Mr. Bandas and Mr. Hanigan. Granted, some have taken the torch from class counsel. But, "[m]erely characterizing . . . attorneys as 'professional objectors' without specifying what, exactly, they have done that is either in bad faith or vexatious, is not enough." *Blessing v. Sirius XM Radio, Inc.*, 2011 WL 5873383, No. 09 CV 10035(HB) (S.D.N.Y. Nov. 22, 2011). Of course, it illogical to conclude an objection is either proper or improper based on outcomes involving other clients in other cases, especially when those outcomes are mixed.

## CONCLUSION

Class counsel and Pivotal are clearly motivated to push this deal through. Class counsel by $2.25 million and Pivotal by a whopping 99.9% discount on potential damages. The Court should demand more than what has been presented concerning Pivotal's claimed financial limitations. Approval should not be granted on the evidence before the Court. Further, as a matter of transparency, Dance Academy re-

urges its request to unseal Fayer's declaration and accompanying exhibits. Even if the settlement is nevertheless approved, class counsel should not be awarded anything approaching $2.25 million considering the limited relief offered in this settlement and the 3.4 lodestar multiplier.

DATED: September 14, 2018              Respectfully submitted,

                                       */s/ Timothy R. Hanigan*
                                       Timothy R. Hanigan (125791)
                                       LANG, HANIGAN &
                                       CARVALHO, LLP,
                                       21550 Oxnard Street, Suite 760
                                       Woodland Hills, California 91367
                                       (818) 883-5644
                                       trhanigan@gmail.com
                                       Attorney for Objector/Class Member

**Certificate of Service**

The undersigned certifies that today he filed the foregoing document on ECF which will send electronic notification to all attorneys registered for ECF-filing.

DATED: September 14, 2018

                                       */s/ Timothy R. Hanigan*