Steven M. Tindall, SBN #187862
Email: smt@classlawgroup.com
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701

Beth E. Terrell, SBN #178181
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray, *Admitted Pro Hac Vice*
Email: jmurray@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

*Class Counsel*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>PIVOTAL PAYMENTS INC., d/b/a/ CAPITAL PROCESSING NETWORK and CPN,<br><br>          Defendant. | NO. 3:16-cv-05486-JCS<br><br>**[~~PROPOSED~~] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARDING ATTORNEYS' FEES, AND APPROVING INCENTIVE AWARD AND ADMINISTRATION COSTS**<br><br>JURY TRIAL DEMAND<br><br>Complaint Filed: September 26, 2016<br><br>DATE:     October 5, 2018<br>TIME:     2:00 p.m.<br>LOCATION:  Courtroom G - 15th Floor |

This matter came before the Court for final approval of a proposed class action settlement between Plaintiff Abante Rooter and Plumbing, Inc. and Defendant Pivotal Payments, Inc., d/b/a as Capital Processing Network and CPN ("Pivotal"). By order dated March 28, 2018, the Court granted preliminary approval of the settlement, preliminarily certified the settlement class for

purposes of sending notice, and authorized notice to the settlement class. Having considered all briefs and argument submitted in connection with the settlement[1] and following a final fairness hearing held on October 5, 2018, the Court finds that the settlement is fair, reasonable, and adequate and grants final approval of the settlement, awards attorneys' fees in the amount of 20% of the settlement fund, and approves an incentive award of $2,000 and administration costs in the amount of $1,071,575.

## Background

On November 1, 2017, Plaintiff filed a motion for preliminary approval of a settlement that required Pivotal to pay $9 million to establish a common fund on behalf of a proposed class of persons who Plaintiff alleges received pre-recorded calls selling Pivotal's payment processing services. The settlement proposed to resolve claims against Pivotal for its alleged violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. At a hearing on December 1, 2017, the Court denied the motion without prejudice. The Court raised several questions about the settlement, including (1) the amount of the settlement fund and whether there was sufficient evidence of Pivotal's financial condition and the challenges Plaintiff faced in proving vicarious liability in the record, (2) whether a claims process was necessary for distribution of the settlement fund to class members, (3) whether the settlement should take into account the fact that some class members received more than one call, (4) the breadth of the class definition, (5)

---

[1] The Court has considered the following briefs and other documents: Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award (Dkt. Nos. 102-108, 126); Objection by Bruce Ebneter (Dkt. No. 111); Objection of Route 42 Dance Academy, LLC (Dkt. No. 112); Supplemental Objection of Route 42 Dance Academy, LLC (Dkt. No. 125); Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. Nos. 127-129); Defendant's Response to Objections to Proposed Class Action Settlement (Dkt. No. 130); Route 42 Dance Academy's Response to Motion for Final Approval of Class Action Settlement (Dkt. No. 132); Plaintiff's Reply in Support of Motion for Final Approval of Class Action Settlement (Dkt. No. 134-135); Defendant's Reply in Support of Motion for Final Approval (Dkt. No. 136-137); ~~Route 42 Dance Academy's Sur-Reply (Dkt. No. 142-1)~~; Supplemental Declaration of Angie Birdsell Regarding Notice Administration (Dkt. No. 145).

the amount of the requested service award, and (6) the amount of the requested attorneys' fee award in relation to the amount to be recovered by the settlement class.

Following the hearing, the parties engaged in further negotiations in light of the issues raised by the Court, modified the agreed upon settlement in various ways, and executed an Amended Settlement Agreement. Plaintiff then filed a motion for preliminary approval of the amended settlement on February 9, 2018. The Amended Settlement Agreement addressed the Court's concerns with the distribution of the settlement fund by allocating funds on a "per call" basis as well as significantly narrowing the breadth of the class definition and release, and reduced the amount of the requested service award. In addition, Plaintiff provided the Court with additional information about Pivotal's financial condition and the risks involved in continued litigation, including the likelihood that Plaintiff would be unable to prove Pivotal's vicarious liability for the allegedly illegal telemarketing calls made by EPLJ and its principal Gordon Rose. Plaintiff also explained why a claims process was necessary and justified given the circumstances of the case, supported by a declaration from the proposed settlement administrator, Epiq Class Action & Claims Solutions, Inc.

Pivotal also filed a memorandum in support of the Amended Settlement Agreement along with a sealed declaration of its Director, Philip Fayer ("Fayer Declaration"). Pivotal's memorandum addressed its contention that it was not in an agency relationship with the telemarketer who made the calls at issue (i.e., EPLJ) and therefore could not be held vicariously liable, citing Ninth Circuit authority and evidence in support. Pivotal also addressed its financial condition, supported by Mr. Fayer's sealed declaration and financial statements attached thereto as exhibits.

The Court held a hearing on March 16, 2018, and addressed some changes to the notice documents and the procedure for class members to opt out of the settlement. Plaintiff filed a supplemental submission with revised notice documents and the Court ultimately granted preliminary approval of the Amended Settlement Agreement on March 28, 2018.

On April 27, 2018, Epiq sent the Court-approved postcard notice by first class mail to 1,750,564 class members. As of August 28, 2018, only 92,125 postcard notices were returned as undeliverable for which Epiq was unable to obtain a more current address. Epiq estimates that the notice program reached approximately 95.2% of settlement class members. Epiq established a settlement website with detailed information about the settlement, including key dates, the Court-approved long form notice, the Amended Settlement Agreement, and relevant briefing. The notice and website also provided a toll-free number that settlement class members could call to reach a 24-hour automated phone system with recorded answers to frequently asked questions. Class members were also able to call a different toll-free number to reach Class Counsel with any questions they had about the settlement. Epiq sent notice of the settlement to 55 federal, state and United States Territory officials in compliance with the Class Action Fairness Act.

Plaintiff filed a motion for attorneys' fees, costs, and service award on May 25, 2018. Plaintiff requested Court approval of an "all in" attorneys' fee award of 25% of the settlement fund, or $2,250,000, which included all litigation costs. Plaintiff also requested Court approval of a service award of $2,000. The motion was posted on the settlement website.

Two class members filed objections to the settlement. Bruce Ebneter objected to the amount of the settlement. Route 42 Dance Academy, LLC ("Route 42 Dance Academy") filed an objection through its counsel, Timothy Hanigan. Route 42 Dance Academy's objection stated that it was also represented by attorney Christopher Bandas, who chose not to make an appearance but reserved the right to do so. Route 42 Dance Academy objected to the amount of the settlement, the requirement that class members file claim forms, and the amount of the requested attorneys' fee award. Route 42 Dance Academy also objected to the fact that the Fayer Declaration was sealed.

The Court held a telephone conference on July 13, 2018 to address Route 42 Dance Academy's objection that Pivotal's financial information should be unsealed for class members to review. At the Court's request, the parties filed memoranda addressing the issue on July 20,

2018. On July 24, 2018, the Court issued an order concluding that the financial information should not be unsealed because it was apparent on its face that, if publicly disclosed, the information could harm Pivotal's business interests and the sealing had not impaired the ability of class members to evaluate the settlement. Nonetheless, the Court provided Route 42 Dance Academy with the opportunity to review the financial information subject to the protective order entered in the case and to file a supplemental objection. Route 42 Dance Academy signed the protective order, reviewed the financial information, and filed a supplemental objection.

Plaintiff filed a motion for final approval of the settlement on August 31, 2018. Pivotal filed a response to the objections to the settlement on the same date. Route 42 Dance Academy filed a response to the motion for final approval reiterating its objections to the settlement and the requested attorneys' fee award. Plaintiff filed a reply in support of their motion for final approval and Pivotal filed a reply to Route 42 Dance Academy's response on September 21, 2018. The Court held a final fairness hearing on October 5, 2018, and granted final approval of the settlement, subject to receiving final detailed information from Epiq about its costs to administer the settlement. No class members or their counsel, including Route 42 Dance Academy, appeared at the final fairness hearing.

**Final Approval of Settlement**

The Court finds that the settlement is fair, reasonable and adequate and grants final approval of the settlement. The Court also certifies the class for settlement purposes and finds that notice to the class complied with Rule 23 and due process.

Settlements are favored, particularly in the class action context. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."). The Ninth Circuit has established a list of factors for courts to consider when evaluating whether a proposed settlement is fair, reasonable and adequate: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class

action status throughout the trial; (4) the benefits offered in the settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). All of the *Churchill* factors support approval of the settlement.

Plaintiff expressed confidence in the merits of its case but noted recent Ninth Circuit decisions that make it difficult for a plaintiff to prevail in a TCPA case that turns on proof of the defendant's vicarious liability. *See Jones v. Royal Admin. Servs. Inc.*, 887 F.3d 443 (9th Cir. 2018); *Kristensen v. Credit Payment Servs.*, 879 F.3d 1010 (9th Cir. 2018). Pivotal addressed the challenges Plaintiff faced in proving vicarious liability as well, citing case law and evidence supporting its position. If Plaintiff failed to prove Pivotal's vicarious liability, the class would recover nothing. The Court finds that *Jones* and the other cases cited by the parties strongly support approving the settlement here.  The Court is also mindful that all litigation, and class litigation in particular, carries substantial risk, and that Plaintiff would have to prevail on a motion for class certification, defeat a motion for summary judgment, persuade a jury of Pivotal's liability, and retain a judgment through appeal for the class to recover anything at all. The settlement avoids the risk, expense, complexity and duration of further litigation and provides prompt and certain relief for class members. *See Nat'l Rural Telecomm'ns Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.").

The Court finds that Pivotal did not have the ability to pay an amount that was higher than the $9 million settlement. The evidence Pivotal provided the Court of its financial condition demonstrates that the amount of the settlement fund is adequate and represents a reasonable settlement of Plaintiff's claims. It is also a virtual certainty that Pivotal could never pay a judgment in the amount of its total potential liability. Pivotal faced a potential judgment of

$5,796,836,000 if it lost at trial (11,593,672 calls x $500 per call). With trebling, Pivotal's exposure could have exceeded $17.4 billion. *See Reickborn v. Velti PLC*, No. 13-cv-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (finding the defendants' financial condition "highlights the reasonableness of the settlement amount"). The settlement also compares favorably to other TCPA settlements. Class members who filed timely claims are expected to receive payments of approximately $25.48 per telemarketing call, resulting in an average payment of $161.32. *See, e.g., Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (collecting cases and approving settlement where each class member received approximately $151); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (approving settlement where each claimant received $34.60); *Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members were expected to receive $40).

The experience and views of counsel also support approval of the settlement. Class Counsel have substantial experience litigating TCPA class actions and support the settlement. *See Perkins v. LinkedIn Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *3 (N.D. Cal. 2016) ("[T]he views of Plaintiffs' counsel, who are experienced in litigating and settling complex consumer class actions, weigh in favor of final approval."). The settlement was negotiated at arm's length after the parties engaged in sufficient discovery to understand the strengths and weaknesses of their claims and defenses. Class Counsel's time records show that they conducted formal and informal discovery of Pivotal and third parties and worked with experts. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding the stage of proceedings supported settlement where class counsel conducted investigation, discovery, and research and worked with experts).

The reaction of the class to the settlement supports approval of the settlement as well. Only two class members objected, 47 requested exclusion, and 37,970 filed valid claims. *See*

*Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2016 WL 1622881, at *8 (N.D. Cal. Apr. 25, 2016) (observing that "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members" (citation omitted)). While the claims rate is on the lower end, that is not a reason to deny approval of the settlement, particularly when (1) a claims process was the only way to ensure that individuals who submitted claims were actually class members and (2) the notice program reached 95.2% of class members, including a large percentage by direct mail. Courts have approved settlements with similar claims rates. *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (affirming approval of settlement where 1,183,444 of 35 million class members—less than 3.4%—filed claims); *Poertner v. Gillette Co.*, 618 F. App'x 624, 625-26, 630-31 (11th Cir. 2015) (affirming approval of settlement where only 55,346 of 7.26 million class members—less than 1%—filed claims); *Moore v. Verizon Commc'ns Inc.*, No. C 09–1823 SBA, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (granting final approval of class action settlement with 3% claims rate); *Touhey v. United States*, No. EDCV 08-01418-VAP (RCx), 2011 WL 3179036, at *7-8 (C.D. Cal. July 25, 2011) (approving a settlement with a 2% claims rate); *see also Keil v. Lopez*, 862 F.3d 685, 696-97 (8th Cir. 2017) ("a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness").

The Court certifies, for settlement purposes only, the following class:

> All individuals, entities and persons to whom: (a) EPLJ or Gordon Rose made one or more non-emergency telephone calls; (b) allegedly on Pivotal's behalf; (c) promoting credit card processing services, other services, or goods of any kind; (d) to their cellular telephone number; (e) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; and (f) at any time in the period from April 15, 2016 up through and including September 2, 2016.

The settlement class satisfies the requirements of Rule 23(a). Numerosity is satisfied because the class has approximately 1.9 million members. *See Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has 40 or more members).

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARDING ATTORNEYS' FEES, AND APPROVING INCENTIVE AWARD AND ADMINISTRATION COSTS - 8
CASE NO. 3:16-CV-05486-JCS

Commonality is satisfied because the central questions in this case—whether Pivotal is vicariously liable for calls made by EPLJ or Gordon Rose and whether the calls violated the TCPA—turn on common evidence and can be resolved for all class members at one time. *See, e.g., Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014). Typicality is satisfied because Plaintiff's claims arise from the same course of alleged conduct by Pivotal and are based on the same legal theories as the class's claims. *See Whitaker v. Bennett Law, PLLC,* No. 13-3145, 2014 WL 5454398, at *5 (S.D. Cal. Oct. 27, 2014). Adequacy is satisfied because Plaintiff has no conflicts of interest with other class members, has demonstrated its commitment to the class, and is represented by counsel who are experienced in litigating TCPA and other class action cases. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

The requirements of Rule 23(b)(3) are also satisfied. Predominance is satisfied because the overarching common question of whether Pivotal is vicariously liable for the calls placed by EPLJ or Gordon Rose can be resolved using the same evidence for all class members and is exactly the kind of predominant common issue that makes certification appropriate. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). The other elements of Plaintiff's claims can also be proven with common evidence, including whether EPLJ and Mr. Rose used an automatic telephone dialing system or a pre-recorded message to place calls to cell phones, and whether Pivotal or EPLJ and Mr. Rose acted willfully. Superiority is satisfied because classwide resolution is the only practical method of addressing the alleged telemarketing violations of millions of class members with modest individual claims. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).

Finally, the Court finds that notice to the class of the settlement complied with Rule 23(c)(3) and (e) and due process. Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement, voluntary dismissal, or compromise. Class members are entitled to the "best notice that is

1  practicable under the circumstances" of any proposed settlement before it is finally approved by

2  the Court. Fed. R. Civ. P. 23(c)(2)(B). The amendments to Rule 23(c)(2)(B) that will go into

3  effect as of December 1, 2018 provide that "notice may be by one or more of the following:

4  United States mail, electronic means, or other appropriate means." To comply with due process,

5  notice must be "the best notice practicable under the circumstances, including individual notice

6  to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*,

7  521 U.S. 591, 617 (1997). The notice program included notice sent by first class mail to

8  1,750,564 class members and reached approximately 95.2% of the class. In addition, Plaintiff's

9  motion for attorneys' fees was filed and posted on the settlement website at least thirty days

10 before the deadline to object in accordance with *In re Mercury Interactive Corp. Securities*

11 *Litigation*, 618 F.3d 988 (9th Cir. 2010).

### Attorneys' Fee Award

13      The Court awards attorneys' fees in the amount of 20% of the settlement fund, which

14 equals $1,800,000. The percentage-of-the-fund method is the appropriate method to use to

15 determine the attorneys' fee award in this case because counsel's efforts created a common fund

16 for the benefit of the class. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942

17 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund

18 settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu

19 of the often more time-consuming task of calculating the lodestar."). The Ninth Circuit has

20 established that 25% is "a proper benchmark figure," with common fund fees typically ranging

21 from 20% to 30% of the fund. *In re Coordinated Pretrial Proceedings in Petroleum Products*

22 *Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) (citation omitted).

23      The 25% benchmark is the starting point for the analysis, and the percentage may be

24 adjusted up or down based on the court's consideration of "all of the circumstances of the case."

25 *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). The relevant factors include

26 (1) the results achieved for the class, (2) the risk counsel assumed, (3) the skill required and the

27

quality of the work, (4) the contingent nature of the fee, (5) whether the fee is above or below the market rate, and (6) awards in similar cases. *Id.* at 1048-50. Most of these factors support a fee award at the 25% benchmark. Class Counsel assumed significant risk of recovering no fee in taking on this litigation on a contingent basis given the challenges in proving Pivotal's vicarious liability for the telemarketing calls and collecting a judgment in light of Pivotal's financial condition. Counsel's skill and quality of work is evident from the settlement they negotiated despite these challenges and the efficient manner in which they litigated this case, and a fee at the 25% benchmark is in line with awards in similar cases. *See, e.g., Ikuseghan v. Multicare Health Sys.*, No. C 14-5539 BHS, 2016 WL 4363198, at *2 (W.D. Wash. Aug. 16, 2016) (awarding a fee of 30% of a $2.5 million settlement fund after surveying fee awards in TCPA class settlements in the Ninth Circuit and finding that more than half of the awards were at the 25% benchmark or higher).

Nonetheless, the Court is awarding a fee of 20% of the settlement fund, which is lower than the Ninth Circuit benchmark. This fee reflects the Court's concern about the recovery for the class being reduced due to, among other things, Pivotal's financial condition . Because the class is recovering less than it otherwise would due to Pivotal's financial condition, the Court believes Class Counsel should recover less as well. The Court noted that a reduction might be made to the attorneys' fees award at the initial preliminary approval hearing held on December 1, 2017. The Court has now decided that a reduction is appropriate.

A rough lodestar crosscheck confirms the reasonableness of the fee award. Class Counsel provided their detailed time records as well as narrative descriptions of the work they performed and the hourly rates, education, and experience of each attorney and staff member who contributed to the litigation. The hourly rates are commensurate with the prevailing rate charged by attorneys of similar skill and experience in the local community, *see Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), as confirmed by the declaration of San Francisco consumer attorney Bryan Kemnitzer after his review of Class Counsel's rates and qualifications.

Class Counsel devoted a reasonable 1,294.05 hours to investigation, discovery, motion practice, and negotiating and documenting the settlement as of May 25, 2018, and have devoted additional time since then to respond to the objections and to class member inquiries. The fee award represents a reasonable 2.7 multiplier on Class Counsel's $663,640.50 lodestar as of May 25, 2018. *See Vizcaino*, 290 F.3d at 1051 n.6 (finding that courts in the Ninth Circuit award multipliers ranging from 1.0 to 4.0).

Class Counsel did not request separate reimbursement of their litigation expenses but did provide the Court with information about the expenses they incurred. Attorneys who create a common fund are entitled to reimbursement of their out-of-pocket expenses so long as they are reasonable, necessary and directly related to the work performed on behalf of the class. *Vincent v. Hughes Air W.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Corson v. Toyota Motor Sales U.S.A., Inc.*, No. CV 12-8499-JGB, 2016 WL 1375838, at *9 (C.D. Cal. Apr. 4, 2016) ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable."); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *6 (N.D. Cal. Feb. 6, 2013) (awarding costs for document review, depositions, and experts). Class Counsel's expenses of $50,874.04 were reasonably incurred and directly related to their work on behalf of the class, with the largest expense related to retaining an expert to perform the data analysis that was essential to proving Pivotal's liability and identifying class members for notice purposes.

### Service Award

The Court approves a service award of $2,000 to Plaintiff Abante Rooter & Plumbing, Inc. The Ninth Circuit has said that service awards that are "intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD*, 779 F.3d at 943 (quoting *Rodriguez v. West Publishing*, 563 F.3d 948, 958-59 (9th Cir. 2009)). Service awards recognize the effort class representatives expend, the financial

or reputational risk they undertake, and their willingness to act as private attorneys general. *West Publishing*, 563 F.3d at 958-59. The factors courts consider include the class representative's actions to protect the interests of the settlement class, the degree to which the class has benefitted from those actions, the time and effort the class representative expended in pursuing the litigation, and any risk the class representative assumed. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Courts also "balance 'the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'" *Wren v. RGIS Inventory Specialists*, No. C 06-05778 JCS, 2011 WL 1230826, at *32 (N.D. Cal. Apr. 1, 2011) (quoting *Staton*, 327 F.3d at 977).

These factors support a $2,000 service award in this case, which is less than half the Ninth Circuit's benchmark for service awards. *See In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established $5,000.00 as a reasonable benchmark [for service awards]."). Fred Heidarpour, the president of Abante Rooter and Plumbing, Inc., filed a declaration describing the time he and his wife devoted to this case. Among other things, they documented the calls they received, contacted Pivotal about the calls, assisted Class Counsel with developing the facts in the complaint, responded to discovery requests and collected responsive documents, sat for depositions, and regularly communicated with Class Counsel about the progress of the case. Mr. Heidarpour estimates that they spent at least 75 hours working on the case, time that otherwise they would have devoted to their business.

## Administration Costs

In its preliminary approval order, the Court appointed Epiq to serve as the Settlement Administrator and to implement the notice program, process class members' claims, and distribute the settlement fund. Epiq has provided the Court with a bill for its services accompanied with a declaration describing the work performed. The Court finds Epiq's

administration costs are reasonable and approves payment of $1,071,575 to Epiq for the work it performed in connection with the settlement.

## The Objections Are Overruled

The Court has considered the objections filed by Bruce Ebneter and Route 42 Dance Academy and overrules them. Aside from the notice and sealing issue which the Court previously determined to be without merit, both objectors raise issues that were previously raised by the Court at the December 1, 2017 preliminary approval hearing and were addressed by the parties to the Court's satisfaction.

Mr. Ebneter and Route 42 Dance Academy both object to the amount of the settlement. The parties provided the Court with a thorough analysis of the risks Plaintiff faced in continued litigation and documentation supporting Pivotal's financial condition, which preclude it from paying an amount that is higher than the $9 million settlement fund. The objections do not take these considerations into account and ignore the very real risk that the class could recover nothing at all. Route 42 Dance Academy was given the opportunity to review the confidential financial information that Pivotal filed under seal. The objections it makes to the persuasiveness and timing of the financial information are speculative and unpersuasive. *See Torisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (rejecting challenges to evidence of the defendant's financial condition because the objector "offers nothing but conclusory argument to the contrary").

Route 42 Dance Academy objects to the claim process and argues that payments should be mailed directly to class members. Plaintiff responded to the Court's concern about the claim process in its motion for preliminary approval of the amended settlement. Among other things, Plaintiff pointed out that a claim process is appropriate when no notice has previously been sent to the class and class members' contact information has not been verified as current. *See, e.g., In re Uber FCRA Litig.*, No. 14-cv-05200-EMC, 2017 WL 2806698, at *8 (N.D. Cal. June 29, 2017); *Braynen v. Nationstar Mortg., LLC*, No. 14-CV-20726, 2015 WL 6872519, at *14 (S.D.

Fla. Nov. 9, 2015). Epiq provided a declaration in which it estimated that sending checks directly to class members would add more than a million dollars to the anticipated cost of the notice program. In addition, submitting a claim required minimal effort, since the class member had only to enter a name, physical address, email address, contact telephone number, the telephone number that received the call, and provide a signature. The parties also ensured that mechanisms were in place to encourage the filing of claims, including a settlement website and toll free numbers. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 591 (N.D. Ill. July 29, 2011) (the proposed claim form was "not unduly burdensome, long, or complex" and the parties' "use of a settlement website and toll free number suggests that the claims process was designed to encourage—not discourage—the filing of claims").

Route 42 Dance Academy objects to the requested attorneys' fee, arguing that it should be limited to Class Counsel's lodestar. The lodestar method is typically used when the value of the class's recovery is difficult to determine or the fee is based on a fee-shifting statute. *See In re Bluetooth*, 654 F.3d at 941. The lodestar method has also been criticized as encouraging lawyers to prolong the litigation and discourage early settlements that would benefit the class. *See Vizcaino*, 290 F.3d at 1050 n.5. The percentage-of-the-fund method is therefore typically used to award a fee in common fund cases like this one. *See* William B. Rubenstein, 5 Newberg on Class Actions § 15:67 (5th ed. Dec. 2017) (empirical data shows that "only about 10% of courts use a pure lodestar method" to determine fees in common fund cases). Route 42 Dance Academy also argues that the attorneys' fee award should be adjusted downward because the multiplier is too high. The Court has awarded a fee of 20% of the settlement fund rather than the 25% that Plaintiff requested because the class is recovering less than it otherwise would due to Pivotal's financial condition. As discussed at the December 1, 2017 preliminary approval hearing, under these circumstances the class's attorneys should recover less as well. The resulting 2.7 lodestar is reasonable and well within the range of average lodestars awarded in this circuit. *See Vizcaino*, 290 F.3d at 1051 n.6.

**Conclusion**

The Court grants final approval of the settlement, awards attorneys' fees in the amount of 20% of the settlement fund, approves payment of a service award to Plaintiff in the amount of $2,000, and approves payment of administrative costs to Epiq in the amount of $1,071,575. The Court orders the parties and Epiq to perform the obligations outlined in the Amended Settlement Agreement, which is incorporated into this order. Settlement class members who made timely and valid requests for exclusion are not bound by the Amended Settlement Agreement or this order. The Court dismisses Plaintiff's claims against Pivotal with prejudice and finds that no reason exists for delay in entering this order and final judgment.

IT IS HEREBY ORDERED.

DATED this __15th__ day of __October_____, 2018.

_____

UNITED STATES ~~DISTRICT~~ JUDGE

Judge Joseph C. Spero

CERTIFICATE OF SERVICE

I, Jennifer Rust Murray, hereby certify that on October 10, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Antony Buchignani, SBN #186528
Email:  tbuchignani@tocounsel.com
Drew Hansen, SBN #218382
Email:  dhansen@tocounsel.com
Amy Burke, SBN #276699
Email:  aburke@tocounsel.com
Seth M. Goldstein, SBN #232071
Email: sgoldstein@tocounsel.com
THEODORA ORINGHER PC
1840 Century Park East, Suite 500
Los Angeles, California 90067-2120
Telephone: (310) 557-2009
Facsimile: (310) 551-0283

*Attorneys for Defendant*

Timothy Ricardo Hanigan
Email: trhanigan@gmail.com
LANG HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, California 91367
Telephone: (818) 883-5644
Facsimile: (818) 704-9372

*Attorneys for Objector Route 42 Dance Academy, LLC*

DATED this 10th day of October, 2018.

TERRELL MARSHALL LAW GROUP PLLC


By: /s/ Jennifer Rust Murray, *Admitted Pro Hac Vice*
Jennifer Rust Murray, *Admitted Pro Hac Vice*
Email: jmurray@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone (206) 816-6603
Facsimile: (206) 319-5450

*Class Counsel*